1 | DAVID M. POITRAS – Bar No. 141309
SUSAN K. SEFLIN – Bar No. 213865
2 | JESSICA L. BAGDANOV – Bar No. 281020
JESSICA S. WELLINGTON – Bar No. 324477
3 | BG LAW LLP
21650 Oxnard Street, Suite 500
4 | Woodland Hills, CA 91367
Telephone:  (818) 827-9000
5 | Facsimile:  (818) 827-9099
Email:      dpoitras@bg.law
6 |             sseflin@bg.law
             jbagdanov@bg.law
7 |             jwellington@bg.law

8 | Attorneys for Chapter 11 Debtor and Plan Proponent

9

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| In re: | Case No. 8:24-bk-11046-TA |
|---|---|
| MASHindustries, Inc., | Chapter 11 |
| Debtor. | **DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED SEPTEMBER 10, 2024** |
| | **Objection Deadline: 10:00 p.m. Pacific time on _____, 2024** |
| | **Ballot Deadline:  10:00 p.m. Pacific time on _____, 2024** |
| | **Plan Confirmation Hearing:** |
| | Date:  [To Be Set]<br>Time:  [To Be Set]<br>Place:  Courtroom 5B<br>          411 West Fourth Street<br>          Santa Ana, CA 92701 |

2995432

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ....................................................................................................1

II.    DATE OF PLAN CONFIRMATION HEARING...............................................2

III.    DEFINITIONS AND EXHIBITS.......................................................................2

    A.    Definitions. .............................................................................................2

    B.    Exhibits. ...............................................................................................11

    C.    Computing Time Periods. ...................................................................11

    D.    Notices and Delivery of Documents. ..................................................11

IV.    PLAN DISCLOSURES .......................................................................................12

    A.    General Background. ...........................................................................12

    B.    Pre-Petition Litigation. .......................................................................15

    C.    The Debtor's Bankruptcy Case. .........................................................13

        1.    Commencement of this Case. ...................................................18

        2.    Employment of Professionals. .................................................19

        3.    Compliance. ..............................................................................20

        4.    Bar Date. ...................................................................................20

        5.    BSP Relief from Stay Motion and Assumption of BSP Lease. .................20

V.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER
THIS PLAN ...........................................................................................................12

    A.    What Creditors and Interest Holders Will Receive Under this Plan.....................21

    B.    Unclassified Claims. ...........................................................................21

        1.    Administrative Claims. .............................................................21

        2.    Priority Tax Claims. .................................................................21

    C.    Classified Claims and Interests. .........................................................21

        1.    Class of Secured Claims. .........................................................21

        2.    Classes of Priority Unsecured Claims.....................................22

        3.    Class of General Unsecured Claims. .......................................22

i

|  |  | 4. | Classes of Interest Holders | 23 |
|--|--|----|-----------------------------|----|
|  | D. | | Means of Effectuating this Plan and Implementation of this Plan | 28 |
|  |  | 1. | Plan Funding. | 23 |
|  |  | 2. | Release of Liens. | 23 |
|  |  | 3. | Composition of Reorganized Debtor and Post-Confirmation Management. | 24 |
|  |  | 4. | Disbursing Agent. | 24 |
|  |  | 5. | Objections to Claims. | 24 |
|  |  | 6. | Investigation of Prosecution of Claims and Avoidance Action. | 25 |
|  |  | 7. | Payment of Professional Fees and Expenses Incurred After the Effective Date. | 27 |
|  |  | 8. | Distributions to Be Made Pursuant to the Plan. | 28 |
|  |  | 9. | Corporate Matters. | 28 |
|  |  | 10. | Exemption from Transfer Taxes. | 28 |
|  |  | 11. | Exculpations and Releases. | 28 |
|  |  | 12. | Executory Contracts and Unexpired Leases. | 28 |
|  |  | 13. | Risk factors. | 28 |
|  |  | 14. | Changes in Rates Subject to Regulatory Commission Approval | 28 |
|  | E. | | Retention of Jurisdiction. | 28 |
|  | F. | | Miscellaneous Issues Regarding Plan Distribution | 29 |
|  |  | 1. | No Fractional Distributions | 29 |
|  |  | 2. | Name and Address of Holder of Claim | 29 |
|  |  | 3. | Unclaimed Distribution | 30 |
| V. | | | EFFECT OF CONFIRMATION OF THE PLAN | 30 |
|  | A. | | Discharge. | 30 |
|  | B. | | Continuing Stay/Injunction. | 31 |
|  | C. | | Revesting of Property in the Reorganized Debtor. | 32 |

2995432

D.      Modification of the Plan. ....................................................................32

E.      Post-Confirmation Status Reports...........................................................33

F.      Post-Confirmation Conversion/Dismissal. ..............................................33

G.      Final Decree. ...........................................................................................33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2995432

# TABLE OF AUTHORITIES

Page

## STATUTES

11 U.S.C. § 101 .................................................................................................1, 4

11 U.S.C. § 101(16) ..................................................................................................7

11 U.S.C. § 101(41) ..................................................................................................8

11 U.S.C. § 1103 ......................................................................................................9

11 U.S.C. § 1106 ......................................................................................................9

11 U.S.C. § 1112(b) ...............................................................................................33

11 U.S.C. § 1124 ......................................................................................................8

11 U.S.C. § 1127 ....................................................................................................29

11 U.S.C. § 1129 ....................................................................................................24

11 U.S.C. § 1141(d)(1)(A) ................................................................................1, 30

11 U.S.C. § 1141(d)(1)(A)(i) .................................................................................30

11 U.S.C. § 1141(d)(1)(A)(ii) ................................................................................30

11 U.S.C. § 1141(d)(1)(A)(iii) ..........................................................................1, 30

11 U.S.C. § 1146(c) ................................................................................................24

11 U.S.C. § 327 ........................................................................................................9

11 U.S.C. § 328 ........................................................................................................9

11 U.S.C. § 329 ........................................................................................................9

11 U.S.C. § 330 ........................................................................................................9

11 U.S.C. § 330(a) ....................................................................................................3

11 U.S.C. § 331 ....................................................................................................3, 9

11 U.S.C. § 501 ......................................................................................................30

11 U.S.C. § 502(c) ..................................................................................................22

11 U.S.C. § 502(g) .............................................................................................11, 30

11 U.S.C. § 502(h) ..................................................................................................30

2995432

11 U.S.C. § 502(i) ............................................................................................... 30

11 U.S.C. § 503(b) ............................................................................................ 3, 9

11 U.S.C. § 503(b)(2) ........................................................................................... 9

11 U.S.C. § 503(b)(3)(D) ...................................................................................... 9

11 U.S.C. § 503(b)(4) ........................................................................................... 9

11 U.S.C. § 506(a) .............................................................................................. 10

11 U.S.C. § 507(a) ................................................................................................ 9

11 U.S.C. § 507(a)(1) .................................................................................... 15, 16

11 U.S.C. § 507(a)(2) ........................................................................................... 3

11 U.S.C. § 507(a)(3) .......................................................................................... 19

11 U.S.C. § 507(a)(4) .......................................................................................... 19

11 U.S.C. § 507(a)(5) .......................................................................................... 19

11 U.S.C. § 507(a)(6) .......................................................................................... 19

11 U.S.C. § 507(a)(7) .......................................................................................... 19

11 U.S.C. § 507(a)(8) ...................................................................................... 9, 17

11 U.S.C. § 510 .................................................................................................... 4

11 U.S.C. § 521 .................................................................................................. 10

11 U.S.C. § 541 .................................................................................................... 4

11 U.S.C. § 542 ................................................................................................. 4, 8

11 U.S.C. § 543 .................................................................................................... 8

11 U.S.C. § 544 ................................................................................................. 4, 8

11 U.S.C. § 545 ................................................................................................. 4, 8

11 U.S.C. § 547 ................................................................................................. 4, 8

11 U.S.C. § 548 .................................................................................................... 8

11 U.S.C. § 549 .................................................................................................... 8

11 U.S.C. § 550 .................................................................................................... 8

11 U.S.C. § 551 ................................................................................................. 4, 8

2995432

11 U.S.C. § 552 ............................................................................................................8

11 U.S.C. § 553 ....................................................................................................4, 8, 10

28 U.S.C. § 1930 ............................................................................................................3

28 U.S.C. § 1930(a)(6) ...........................................................................................16, 34

## RULES

Bankruptcy Rule 1000 ...................................................................................................23

Bankruptcy Rule 1007 ...................................................................................................10

Bankruptcy Rule 1009 ...................................................................................................10

Bankruptcy Rule 3001(e) .................................................................................................8

Bankruptcy Rule 9006(a) .........................................................................................4, 11

Bankruptcy Rule 3020(e) .............................................................................................1, 6

2995432

# I.    INTRODUCTION

MASHindustries, Inc. is the debtor (the "Debtor") in the above-captioned subchapter v chapter 11 bankruptcy case.  On April 24, 2024, the Debtor commenced its bankruptcy case (the "Case") by filing a voluntary petition under subchapter v of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").  The Case is pending before the United States Bankruptcy Court for the Central District of California, Santa Ana Division, before the Honorable Theodor C. Albert (the "Bankruptcy Court" or "Court").  This document is the *Debtor's Chapter 11 Plan of Reorganization Dated September 10, 2024* (as may be amended or modified, the "Plan"). The Plan is being proposed by the Debtor pursuant to sections 1191 and 1129 of the Bankruptcy Code.

The effective date ("Effective Date") of the Plan will be the first business day after entry of the order confirming the Plan (the "Confirmation Order"), provided the Bankruptcy Court has waived the provisions of Bankruptcy Rule 3020(e) and no stay of the Confirmation Order is in effect.  The Debtor following the Effective Date shall be referred to herein as the "Reorganized Debtor."

The hearing on Plan confirmation (the "Confirmation Hearing") has not yet been set by the Court.  Accordingly, this Plan includes several blanks relating to the Confirmation Hearing that will be completed and included in the Plan that is served on creditors and parties in interest with the notice of the Plan and Confirmation Hearing.

This Plan is intended to provide the structure and method by which the Debtor will reorganize.  This Plan provides creditors of the Debtors with information to enable them to make an informed judgment concerning the method by which the Debtor plans to reorganize and emerge from bankruptcy.  If the Court confirms the Plan, it will be binding on the Debtor, its creditors and other interested parties.  Under the Plan, the Debtor will satisfy its debt and other claims as set forth in Article IV below.

This Plan provides for the reorganization of the Debtor's finances and proposes to pay creditors from: (1) projected cash on hand on the Effective Date; (2) the Debtor's projected disposable income over the next three years as provided for in 11 U.S.C. § 1191(c)(2)(A); and (3)

1

2995432

certain contributions by the Debtor's insiders.

## II.   DATE OF PLAN CONFIRMATION HEARING

Pursuant to section 1128 of the Bankruptcy Code, a Confirmation Hearing will be held on _____, 2024 at _____ .m. Pacific Standard Time, in Courtroom 5B, 411 West Fourth Street, Santa Ana, California 92701.[1]

Any objection to confirmation of the Plan must be made in writing and specify in detail the name and address of the objecting party, all grounds for the objection and the amount of the claim. Any such objection must be filed with the Court and served so that it is received by the Court, the Office of the United States Trustee, the Subchapter V Trustee, and counsel for the Debtor, on or before _____, 2024.   Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.[2]

**Failure by a creditor to timely file an objection to the Plan or timely cast a ballot shall constitute an agreement by silence to accept the terms contained in this Plan.**

Any interested party desiring further information about the Plan should contact counsel of record for the Debtor, Susan Seflin or David Poitras of BG Law LLP, 21650 Oxnard St., Suite 500, Woodland Hills, California 91367 via email at sseflin@bg.law or dpoitras@bg.law.

## III.   DEFINITIONS AND EXHIBITS

**A.      Definitions.**

For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article II.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules, in that order or priority.  Throughout this Plan, the use of the masculine, feminine, neuter, plural or singular shall be understood to include each of the others as the context may reasonably dictate.  As used in this Plan, the following definitions shall apply:

---

[1] The Confirmation Hearing has not yet been set by the Court.  The date and time will be inserted at a later time.  There is no time period to object to this Plan yet.

[2] There is currently no deadline to object to the Plan because that date has not yet been set by the Court.

1.     **Administrative Claim.**  A Claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries or commissions for services); (b) compensation for legal, financial advisory, accounting and other services, and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

2.     **Administrative Claims Bar Date.**  The date which is thirty (30) days after the Effective Date.

3.     **Allowed Administrative Claim.**  An Administrative Claim which is an Allowed Claim.

4.     **Allowed Claim.**  A Claim against the Debtor and/or the Estate as to which no objection has been filed, or if an objection has been filed, has either been overruled or otherwise resolved by the allowance of such Claim by the Bankruptcy Court, if the Claim was: (1) scheduled in the list of creditors prepared and filed with the Bankruptcy Court by the Debtor and not listed as disputed, contingent or unliquidated as to amount; or (2) the subject of a timely filed proof of claim; or (3) which has been allowed by order of the Bankruptcy Court.

5.     **Allowed Priority Claim.**  A Priority Claim which is an Allowed Claim.

6.     **Allowed Priority Tax Claim.**  A Priority Tax Claim which is an Allowed Claim.

7.     **Allowed Professional Fees.**  The amount of fees and costs incurred by Professionals engaged by the Debtor in connection with the Case which are (1) timely requested by application filed on or prior to the Administrative Claims Bar Date; and (2) which are allowed by order of the Bankruptcy Court.

8.     **Allowed Secured Claim.**  A Secured Claim which is an Allowed Claim.

9.     **Allowed General Unsecured Claim.**  A General Unsecured Claim which is an Allowed Claim.

2995432

10. **Assets.**  All tangible and intangible assets of every kind and nature of the Debtor and its Estate, and all proceeds thereof, as of the Effective Date.

11. **Avoidance Actions.**  Causes of Action arising under Bankruptcy Code sections 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or federal statutes and common law including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

12. **Ballot.**  The form of ballot or ballots that will be distributed with the Plan to holders of Claims entitled to vote under the Plan in connection with the solicitation of votes to accept or to reject the Plan.

13. **Bankruptcy Code.**  Title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*), as now in effect or hereafter amended.  All citations in the Plan to section numbers are to the Bankruptcy Code unless otherwise expressly indicated.

14. **Bankruptcy Court.**  The United States Bankruptcy Court for the Central District of California, Santa Ana Division, or such other federal court with competent jurisdiction over the Case.

15. **Bankruptcy Rules.**  Federal Rules of Bankruptcy Procedure, as now in effect or hereafter amended.

16. **Bar Date.**  July 3, 2024, for non-governmental creditors; and October 21, 2024, for governmental units.

17. **Business Day.**  Any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

18. **Case.**  This Chapter 11 bankruptcy case, filed by the Debtor, pending in the Bankruptcy Court as Case No. 8:24-bk-11046-TA.

19. **Cash.**  Currency, checks, negotiable instruments and wire transfers of immediately available funds.

20. **Cash Flow Projections.**  **Exhibit A** hereto, which lists the Debtor's post-confirmation cash flow projections, including all payments to be made under the Plan.

21. **Causes of Action.**  Any and all causes of action, Avoidance Actions, suits,

4

2995432

rights of action, rights to legal remedies, rights to equitable remedies, rights to payment of any amounts owing to the Debtor or the Estate for any reason whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that the Debtor and/or Estate may hold against any Person but excluding those Persons who are released or exculpated, or against whom claims were waived, pursuant to this Plan.

22.    **Claim.**  Any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, against the Debtor and/or the Estate, and any right to any legal or equitable remedy for breach of any obligation giving rise to a right to payment, whether or not such right is an equitable remedy or is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, against the Debtor and/or the Estate.

23.    **Claimant.**  A Person who holds a Claim.

24.    **Claim Chart.**  **Exhibit B** to the Plan and Disclosure Statement which lists all Claims scheduled by the Debtor and/or filed against the Debtor as of the date reflected therein.

25.    **Claims Objection Deadline.**  One hundred eighty (180) days following the Effective Date, which date may be extended by the Bankruptcy Court upon motion of any party in interest for cause.

26.    **Class.**  A category of Claims which are substantially similar to each other and into which Allowed Claims are grouped and classified pursuant to the Plan, unless a member of the Class has agreed to a subordinated treatment.  The Classes provided for in the Plan are summarized in Article IV of the Disclosure Statement and Article IV of the Plan.

27.    **Confirmation.**  The entry of the Confirmation Order on the docket of the Bankruptcy Court.

28.    **Confirmation Date.**  The date upon which the Confirmation occurs.

29.    **Confirmation Hearing.**  The hearing or hearings held by the Bankruptcy

5

2995432

Court to consider and rule upon the Debtor's request for confirmation of the Plan.

        **30.**    **Confirmation Order.**  The order entered by the Bankruptcy Court confirming the Plan.

        **31.**    **Creditor.**  A Person asserting a Claim; *aka* a Claimant.

        **32.**    **Debtor.**  MASHindustries, Inc. is the chapter 11 debtor in the Case.

        **33.**    **Disallowed.**  With respect to a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero, or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date, as appropriate, or deemed timely filed pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

        **34.**    **Disbursing Agent.**  The Reorganized Debtor is the Disbursing Agent.

        **35.**    **Disputed Claim.**  Disputed Claims include: (i) a Claim which has been scheduled as disputed, contingent or unliquidated where a Proof of Claim has not been timely filed thereafter; (ii) a Claim as to which an objection has been timely filed with the Bankruptcy Court, and which objection has not been withdrawn on or before any date fixed for filing such objections by the Plan or by order of the Bankruptcy Court and has not been overruled or denied by a Final Order; and (iii) any Claim listed as a Disputed Claim on the Claim Chart.

        **36.**    **Distribution(s).**  Any distribution by the Reorganized Debtor to any Class, Claimant or Creditor.

        **37.**    **Effective Date.**  The first Business Day after the Confirmation Date, provided that the Bankruptcy Court has waived the provisions of Bankruptcy Rule 3020(e) and no stay of the Confirmation Order is in effect.  If the Bankruptcy Court does not waive the provisions of Bankruptcy Rule 3020(e), then the Effective Date will be the first Business Day which is at least fifteen (15) days following the date of entry of the Confirmation Order, providing there has been no

appeal from and order staying the effectiveness of the Confirmation Order.  If there has been an order entered staying the effectiveness of the Confirmation Order, the Effective Date shall be the first Business Day after the stay is no longer in effect with respect to the Confirmation Order.

38. **Equity Interest.**  An "equity security" as defined in § 101(16) of the Bankruptcy Code, including units.

39. **Equity Holders.**  A holder of any Unit or an Equity Interest.  Bernard Brucha is the only Equity Holder of the Debtor as of the Petition Date.

40. **Estate.**  The estate of the Debtor created upon commencement of the Case pursuant to Section 541 of the Bankruptcy Code.

41. **Final Fee Application(s).** The final request for payment of Professional Fee Claims.

42. **Final DIP Order.**  The *Final Order Authorizing MASHindustries, Inc. to Use Cash Collateral and Granting Replacement Liens* [Doc. No. 127] entered by the Bankruptcy Court on July 2, 2024.

43. **Final Order.**  An order or judgment of the Bankruptcy Court, as entered on the applicable docket, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor prior to the Effective Date, or to the Reorganized Debtor after the Effective Date, or, in the event that an appeal, writ of certiorari, or re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which re-argument or rehearing was sought and denied, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired.

44. **General Unsecured Claim.**  A Claim against the Debtor that is not secured by a charge against, or interest in, any of the Debtor's Assets, that is not an Administrative Claim, a

Priority Claim, or a Priority Tax Claim.

**45.** **Holder(s).** A Person holding a Claim or Interest against the Debtor, provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferor to be deemed the Holder of the Claim for distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either (1) no objection to the transfer having been filed, or (2) any objection to such transfer having been resolved in favor of the transferor by no later than the Confirmation Date. In other words, after the Effective Date, without the express consent of the Reorganized Debtor, no transfer of Claims will be recognized by the Reorganized Debtor for Distributions made pursuant to the Plan.

**46.** **Impaired.** When used in reference to a Claim, Interest or Class, a Claim, Interest or Class that is impaired within the meaning of Section 1124 of Bankruptcy Code.

**47.** **Interest.** When "Interest" is used in the context of holding an equity security or unit of the Debtor (and not used to denote (i) the compensation paid for the use of money for a specified time and usually denoted as a percentage rate of interest on a principal sum of money, or (ii) a security interest in property), then "Interest" shall mean an interest or share in the Debtor of the type described in the definition of "Equity Interest."

**48.** **Litigation Claims.** Any and all Causes of Action of the Effective Date, including without limitation all causes of action arising under chapter 5 of the Bankruptcy Code, including without limitation those causes of actions which could be brought by the Debtor under one or more of Sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553 of the Bankruptcy Code against any Person or other entity, including any governmental entity, who received an avoidable transfer from the Debtor, including but not limited to insiders, employees, officers, and equity holders of the Debtor.

**49.** **OUST.** Office of the United States Trustee.

**50.** **Person.** Person shall have the same meaning as in Section 101(41) of the Bankruptcy Code.

**51.** **Petition Date.** April 24, 2024, the date on which the Debtor filed its voluntary petition for relief under Chapter 11, thereby commencing this Case.

8

2995432

52.   **Plan.**  The *Plan of Reorganization Dated September 10, 2024* (as may be further amended or modified) proposed by the Debtor and including, without limitation, all exhibits, supplements, appendices and schedules thereto, either in its present form or as it may be altered, amended, supplemented, or modified from time to time.

53.   **Post-Confirmation Status Report.**  The status report to be filed by the Reorganized Debtor within 120 days of the Confirmation Date, and each 120 days thereafter or as otherwise ordered by the Bankruptcy Court.

54.   **Priority Claim.**  A Claim entitled to priority under § 507(a) of the Bankruptcy Code, other than a Priority Tax Claim pursuant to 11 U.S.C. § 507(a)(8).

55.   **Priority Tax Claim.**  A Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

56.   **Professional Fee Applications.**  Applications filed pursuant to 11 U.S.C. §§ 330, 331 or 503(b)(4) for allowance of Administrative Claims relating to the compensation and reimbursement of expenses of Professionals employed pursuant to an order of the Bankruptcy Court under Sections 327 or 1103 of the Bankruptcy Code for services provided and expenses incurred prior to the Effective Date.

57.   **Professional Fee Claims.** (A) a claim under Bankruptcy Code §§ 327, 328, 330, 331, 503(b), 1103 or 1106 for compensation for professional services rendered or expenses incurred on and after the Petition Date and prior to the Effective Date on behalf of the Estate by a Professional duly employed and authorized by an Order of the Bankruptcy Court; or (b) a claim under Bankruptcy Code Section 503(b)(4) for reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under Section 503(b)(3)(D) for making a substantial contribution to the Estate.

58.   **Professionals.**  Those Persons (i) that are subject to the retention pursuant to an order of the Bankruptcy Court in accordance with Sections 327, 1103 and/or 1106 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to Sections 327, 328, 329, 330 and 331of the Bankruptcy Code or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Sections 330 and 503(b)(2) of

the Bankruptcy Code.

59.    **Proponent.** The proponent of the Plan is the Debtor.

60.    **Pro Rata.** Pro rata means proportionate so that the ratio of (a) the amount of the consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which the Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

61.    **Reorganized Debtor.** The Debtor following the occurrence of the Effective Date.

62.    **Reserve Account.** An account created, and in an amount determined, by the Reorganized Debtor pending the resolution of a Disputed Claim, containing a sufficient amount to satisfy such Disputed Claim in a manner consistent with that Claim's treatment under the Plan should it ultimately become an Allowed Claim.

63.    **Scheduled**. Scheduled means the information set forth in the Schedules.

64.    **Schedules.** The Schedules of Assets and Liabilities filed by the Debtor in accordance with 11 U.S.C. § 521 and Bankruptcy Rule 1007 [Doc. No. 68], as the same may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the Effective Date.

65.    **Secured Claim.** A Claim that is secured by a lien against any Assets to the extent of the value of the Estate's interest in such Assets, or to the extent of the amount of such Claim subject to setoff in accordance with Section 553 of the Bankruptcy Code, in either case determined pursuant to Section 506(a) of the Bankruptcy Code.

66.    **Small Business Administration (the "SBA").** The Debtor's senior secured lender.

67.    **Subchapter V Trustee.** Gregory Jones, the Subchapter V Trustee appointed in the Debtor's bankruptcy case.

68.    **Unclaimed Distribution.** Any Distribution made by the Reorganized Debtor to the address of the recipient reflected in the Schedules (or on any Proof of Claim filed by the Claimant), by: (a) checks which have been returned as undeliverable without a proper forwarding

2995432

address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which have not been cashed for a period of ninety (90) days after the date such checks were issued, or (d) disbursements that were not made because the Holder of such Allowed Claim failed to provide required tax information within forty-five (45) days after the Reorganized Debtor has sent any request for same to such Claimant's address as reflected in the Schedules and/or such Claimant's Proof of Claim.

    **69.** **Unclassified Claim.**  Any Claim which is not part of any Class, including Administrative Claims and Priority Tax Claims.

    **70.** **Unimpaired.**  A Claim is unimpaired when it is within a class that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

    **71.** **Unsecured Claim.**  Any Claim, including without limitation any claim arising under Section 502(g) of the Bankruptcy Code, that is not secured by a lien on, security interest in, or charge against, any Asset.

**B.** **Exhibits.**

    All Exhibits to this Plan are incorporated into and are part of this Plan as if set forth in full herein.

**C.** **Computing Time Periods.**

    In computing any period of time prescribed or contemplated by the Plan, Bankruptcy Rule 9006(a) shall apply.

**D.** **Notices and Delivery of Documents.**

    All notices, correspondence, and other deliveries under the Plan must be directed as follows:

| To the Debtor or Reorganized Debtor: | MASHindustries, Inc.<br>7150 Village Drive<br>Buena Park, CA 90621 |
|---|---|
| With a Copy to: | David Poitras<br>Susan Seflin<br>BG Law LLP<br>21650 Oxnard St., Suite 500<br>Woodland Hills, CA 91367<br>Fax: (818) 827-9099<br>Email: dpoitras@bg.law<br>sseflin@bg.law |

11

2995432

# IV.  PLAN DISCLOSURES

## A.    General Background

Mash Studios, Inc. ("Studios"), an affiliate of the Debtor, was formed in 2005 by Bernard Brucha and Mr. Brucha is the sole shareholder of Studios.  Studios designs custom office furniture for large corporations such as Nike, Chanel and Google.  In 2013, one of Studios suppliers went out of business and Mr. Brucha formed the Debtor, a California corporation, to acquire those assets to begin the Debtor's furniture and millwork manufacturing business.  Mr. Brucha is the sole shareholder of the Debtor.  Studios and the Debtor have historically overlapped parts of their respective businesses; for example, the Debtor regularly bids on projects deigned by Studios.

The Debtor's business (including its manufacturing operations) is located at 7150 Village Drive, Buena Park, California (the "Buena Park Property") and has been since 2019. The Debtor employs 34 people and Studios employs 7 people.  The Debtor's website is www.mashindustries.com and Studios' website is www.mashstudios.com.

For the fiscal year 2023, the Debtor's gross revenue was $5,001,733 and Studios gross revenue was $9,066,031.  Prior to Covid in 2020, the Debtor's business and Studios' business were historically profitable.  Along with the commercial office market in general, both businesses were hit extremely hard by the Covid pandemic, with new orders greatly reduced for 2020 through 2023. The Debtor's business has begun turning the corner in 2024.  The Debtor expects a return to profitability in 2024 (excluding restructuring related costs).

## B.    Pre-Petition Litigation

Prior to February of 2024, the Debtor and Studios did not have the same address.  Studios had studios and offices in Los Angeles, and the Debtor occupied the Buena Park Property.  As part of their effort to reduce expenses, Studios gave up its offices and studios in Los Angeles in February of 2024, and now Studios' employees either work remotely or at the Buena Park Property as necessary.  Although the Debtor has always occupied the Buena Park Property with its manufacturing facility, Studios is the named tenant on the lease.  In 2023, the Debtor began having problems timely paying the rent of $86,000 a month on the Buena Park Property and as of the petition date, the Debtor/Studios were seven months behind on rent though they did pay March and

1    April 2024 rent (and the Debtor has timely been paying post-petition rent).

2    On January 10, 2024, Buchanan Street Partners ("BSP"), the landlord for the Buena Park

3    Property, served Studios with a three day notice to pay rent or quit.  While the Debtor and Studios

4    responded to the three-date notice with a payment plan proposal, the Debtor and Studios were not

5    able to make the full payment and their payment plan was rejected by BSP. Thereafter, on February

6    16, 2024, BSP filed an unlawful detainer action and obtained a writ of possession for the Buena Park

7    Property.  On Friday, April 19, 2024, Studios was served with a Notice to Vacate the Buena Park

8    Property on or before April 25, 2024 at 6:01 a.m. The Debtor's manufacturing facility located at the

9    Buena Park Property is a 77,000 sq. ft. manufacturing facility, houses valuable equipment, and is

10   vital to the Debtor's ongoing operations and return to profitability.  The Debtor's thirty-four

11   employees work out of the Buena Park Property and being locked out of the Buena Park Property by

12   the Sheriff would have decimated Industries' business and operations. Therefore, both the Debtor

13   and Studios commenced chapter 11 bankruptcy cases.

14   **C.    The Debtor's Bankruptcy Case**

15   **1.    Commencement of this Case.**

16   On April 24, 2024 (the "Petition Date"), the Debtor, a California corporation, filed a

17   voluntary petition for relief under subchapter v of chapter 11 of the Bankruptcy Code.  The Debtor

18   continues to operate its business and manage its financial affairs as debtor in possession pursuant to

19   section 1184 of the Bankruptcy Code.  No examiner, or committee has been appointed in the

20   Debtor's chapter 11 case.

21   On the Petition Date, the Debtor's affiliate, Mash Studios, Inc. (previously defined as

22   "Studios") also filed a voluntary petition under chapter 11 of the Bankruptcy Code, commencing

23   bankruptcy case no. 8:24-bk-11048-TA.  On April 25, 2024, Gregory K. Jones was appointed as the

24   Subchapter V Trustee in both the Debtor's and Studios' bankruptcy cases.

25   On April 25, 2024, the Court entered an order jointly administering the Debtor's and Studios'

26   bankruptcy cases.  Doc. No. 21.  However, on May 23, 2024, the Court entered an order dismissing

27   Studios' chapter 11 case.  8:24-bk-11048-TA, Doc. No. 48.

28

13

2995432

**2.    Employment of Professionals.**

The Debtor filed an application to employ BG Law LLP ("BG") as its general bankruptcy counsel on May 15, 2024 [Doc. No. 64], which was approved pursuant to Court order entered on June 18, 2024 [Doc. No. 104] (the "BG Employment Order").

The Debtor filed an application to employ Stretto, Inc. ("Stretto") as its claims, noticing and solicitation agent on May 15, 2024 [Doc. Nos. 65 and 66], which was approved pursuant to order entered on June 18, 2024 [Doc. No. 103] (the "Stretto Employment Order").

The Debtor filed an application to employ Broadway Advisors, LLC as its financial advisor on July 17, 2024 [Doc. No. 143] (the "Broadway Employment Application"), which was approved pursuant to Court order entered on August 29, 2024 [Doc. No. 171] (the "Broadway Employment Order.")

The Debtor may file an application to employ its non-bankruptcy accountant but hopes to have the Plan confirmed prior to needing to employ its accountant.

The Debtor does not expect to file any other employment applications at this time.

**3.    Compliance.**

The Debtor filed an application [Doc. No. 44] to extend the time to file its schedules and statement of financial affairs (collectively, the "Schedules") to May 17, 2024, which application was granted pursuant to Court order entered on May 1, 2024 [Doc. No. 47].  The Debtor timely filed its Schedules on May 17, 2024.  The Debtor timely submitted its 7-day package to the OUST.  The Debtor has timely filed its monthly operating reports.

**4.    Bar Date.**

The bar date for filing proofs of claim or interest in the Debtor's bankruptcy case was July 3, 2024, for non-governmental creditors and is October 21, 2024, for governmental units. See, Doc. No. 17.

**5.    BSP Relief from Stay Motion and Assumption of BSP Lease.**

On June 4, 2024, BSP filed its motion for relief from the automatic stay [Doc. No. 93] (the "BSP Relief from Stay Motion") pursuant to which BSP sought relief from stay to, among other things, gain possession of the Buena Park Property.  While the BSP Relief from Stay Motion is still

1    pending, the Debtor and BSP have recently reached an agreement which, among other things,

2    resolves the BSP Relief from Stay Motion, provides for the Debtor to assume the BSP lease, and

3    provides for the Debtor and Studios to pay the cure mount of $629,433.68 (with the Debtor paying a

4    total of $300,000, Studios paying $91,433.68 and BSP being authorized to apply the pre-petition

5    deposit to the balance of $238,000). The Debtor expects to have a motion to assume / motion to

6    settle on file with respect to this agreement no later than September 18, 2024.

7    **V.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

8    **UNDER THIS PLAN**

9    **A.    What Creditors and Interest Holders Will Receive Under this Plan.**

10   As required by the Bankruptcy Code, this Plan classifies Claims and Interests in various

11   Classes according to their right of priority under the Bankruptcy Code.  This Plan states whether

12   each Class of Claims or Interests in impaired or unimpaired.  This Plan provides the treatment each

13   Class will receive.

14   **B.    Unclassified Claims.**

15   Certain types of Claims are not placed into voting Classes; instead they are unclassified.

16   They are not considered impaired and they do not vote on this Plan because they are automatically

17   entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not

18   placed the following Unclassified Claims in a Class.

19   **1.    Administrative Claims.**

20   Administrative Claims are for costs or expenses of administering the Debtor's Chapter 11

21   Case which are allowed under Bankruptcy Code Section 507(a)(1).  Allowed Administrative Claims

22   representing post-Petition Date liabilities incurred by the Debtor in the ordinary course of business,

23   for which no approval by the Bankruptcy Court is required, shall be paid in full in accordance with

24   the terms and conditions of the particular transaction giving rise to such liabilities and any

25   agreements relating thereto.  The Bankruptcy Code requires that all Administrative Claims be paid

26   on the Effective Date unless a particular Claimant agrees to a different treatment.  After the Effective

27   Date, while the Debtor's Chapter 11 Case remains open, the Reorganized Debtor will (i) file with the

28   United States Trustee quarterly operating reports; and (ii) timely pay fees incurred pursuant to 28

1  U.S.C. Section1930(a)(6).

2      The following chart lists all of the Debtor's Section 507(a)(1) administrative claims and their

3  treatment under this Plan.

| NAME | AMOUNT OWED[3] | TREATMENT |
|---|---|---|
| Clerk's Office Fees | $0 (Estimate) | Paid in full on the Effective Date |
| Office of the U.S. Trustee Fees | $0 | N/A.  There are no quarterly fees in a subchapter v case. |
| BG Law LLP, bankruptcy counsel to the Debtor | Approximately $190,000 in addition to the pre-petition retainer ($39,870.21). | Paid in full as set forth in the Cash Flow Projections. |
| Broadway Advisors, LLC, financial advisor to the Debtor | Approximately $70,000 in addition to any post-petition payments made by the Debtor or expected to be made by the Debtor prior to the Effective Date pursuant to the Broadway Employment Order. | Paid in full as set forth in the Cash Flow Projections. |
| Gregory Kent Jones, the Subchapter V Trustee | Approximately $24,000. | Paid in full as set forth in the Cash Flow Projections. |
| Stretto, Inc., claims, noticing and solicitation agent for the Debtor | Approximately $30,000 in addition to the pre-petition retainer ($5,000). | Paid in full in the ordinary course of business pursuant to the order approving Stretto's employment [Doc. No. 103] and as set forth in the Cash Flow Projections. |
| TOTAL | $314,000 est. | Paid in the manner described above |

22      Court Approval of Fees Required:

23      Except for the professionals who have a Bankruptcy Court order providing otherwise, the

24  Bankruptcy Court must approve, or must have previously approved on a final basis, all Professional

25  Fee Claims listed in the foregoing chart before they may be paid.  Only the amount of fees and

---

[3] The amounts set forth in this chart are estimates of the administrative claim amount that the Debtor believes each administrative claimant will be entitled to on the Effective Date.  The amounts set forth in this chart are subject to change.

expenses approved by the Bankruptcy Court is required to be paid under the Plan.  The

administrative claim amounts set forth above for professional fees and expenses simply represent the

Debtor's best estimate as to the amount of Allowed Professional Fee Claims, which estimates

assume that the Debtor makes all of the post-petition professional fee monthly payments that the

Bankruptcy Court has authorized the Debtor to make.  The actual Administrative Claims for

Professional fees and expenses may be higher or lower.  By voting to accept the Plan, Creditors are

not acknowledging the validity of, or consenting to the amount of, any of these Administrative

Claims for professional fees and expenses, and Creditors are not waiving any of their rights to object

to the allowance of any of these Professional Fee Claims.  Also, the Professionals employed in this

Case may, prior to the Effective Date, seek Court approval of interim fees and expenses incurred in

excess of the post-petition professional fee monthly payments received by such Professionals,

pursuant to prior orders of the Bankruptcy Court.  To the extent any such interim fees and expenses

are allowed by the Bankruptcy Court and paid by the Debtor prior to the Effective Date, that will

reduce the amount of professional fees and expenses to be paid by the Reorganized Debtor.

**The last day to file any Administrative Claims (but NOT for ordinary post-petition**

**operating obligations or Professional Fee Claims) is thirty (30) days after the Effective Date.**

Administrative expenses will be paid on the later of the Effective Date or 10 days after the entry of a

Final Order allowing the administrative expense, unless the administrative claimant has consented

otherwise in writing.  Post-petition trade claims incurred by the Debtor in the ordinary course of

business shall be paid according to ordinary trade terms in the absence of an express agreement to

the contrary.

The figures set forth above are just estimates of what the Debtor anticipates will be the

ultimate allowed amount of such Administrative Claims.  The actual Administrative Claims could be

higher or lower depending on a number of factors.

**2.      Priority Tax Claims.**

Priority tax claims include certain unsecured income, employment and other taxes described

by Section 507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code requires that each holder of

such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash

payments, over a period not exceeding five years from the Petition Date. Two Section 507(a)(8)

priority tax claims were filed. The first is Claim No. 15 filed by the California Department of Tax

and Fee Administration (the "CDTFA") in the amount of $180,275.48, which arises out of a pre-

petition payment plan between the CDTFA and the Debtor.  The Debtor proposes to repay the

CDTFA as set forth in the Cash Flow Projections.  The second is Claim No. 21 filed by the City of

Los Angeles (the "City of LA") in the amount of a $6,555 priority tax claim.  The Debtor is

investigating the validity of this claim and may object to it.  If the Debtor determines that it is valid,

it will be paid as set forth in the Cash Flow Projections.    If there are any other Priority Tax Claims

as of the Effective Date, these claims will be paid in full by the Reorganized Debtor over a period

not exceeding five years from the Petition Date.

**C.    Classified Claims and Interests.**

    **1.    Class of Secured Claims.**

Secured Claims are claims secured by liens on property of the Estate.  The following chart

sets forth the description and treatment of each of the Debtor's known Secured Claims.  The Debtor

has listed the below Creditors based on the priority of their liens.

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| 1 | Small Business Administration ("SBA")<br><br>Collateral Description: 1st Priority Lien on all assets of the Debtor's Estate.<br><br>Amount of Claim: Approximately $541,000 | No. | The SBA Claim will be paid pursuant to the Debtor's loan agreement with the SBA.<br><br>**Unimpaired.  This Class 1 Claim is a Secured Claim and will be paid pursuant to contract terms.  Presumed to accept the Plan and not entitled to vote.** |
| 2 | US Bank Equipment Finance [Equipment Loan]<br><br>Collateral Description: Certain woodworking machinery (BIESSE STREAM A-6.0 Edge Bander Machine)<br><br>Amount of Filed Proof of Claim No. 25:  $77,250 | No. | The US Bank Equipment Finance loan will be paid pursuant to contract terms.<br><br>**Unimpaired.  This Class 1 Claim is a Secured Claim and will be paid pursuant to contract terms.  Presumed to accept the Plan and not entitled to vote.** |

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| 3 | JP Morgan Chase Bank, N.A. ("JP Morgan Chase")<br><br>Collateral Description: Machinery and equipment<br><br>Amount of Filed Proof of Claim No. 13: $57,994.9- | No. | The JP Morgan Chase Bank loan will be paid pursuant to contract terms.<br><br>**Unimpaired.  This Class 1 Claim is a Secured Claim and will be paid pursuant to contract terms.  Presumed to accept the Plan and not entitled to vote.** |

## 2.      Classes of Priority Unsecured Claims.

Certain Priority Claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in Classes.  These types of Claims are entitled to priority treatment as follows:  the Bankruptcy Code requires that each holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.  The Debtor does not believe that there are any valid outstanding Section 507(a)(3), (4), (5), (6), or (7) priority unsecured claims.  However, one claim, Claim No. 16 filed by Dolores Cadena, alleges to be a priority claim of $2,870.20 arising out of pre-petition wages.  The Debtor intends on objecting to this claim and seeking disallowance of the claim in its entirety.

| CLASS # | DESCRIPTION | IMPAIRED (YES/NO) | TREATMENT |
|---|---|---|---|
| 4 | Dolores Cadena<br><br>Amount of Claim: $2,879.20 priority claim. | No. | The Debtor does not believe that this is a valid claim and will be objecting to it.  If the claim is ultimately allowed as a priority claim, the Debtor will pay it in full upon entry of an order allowing the claim.<br><br>**Unimpaired.  This Class 4 Claim is a disputed Priority Claim.  If it becomes an Allowed Priority Claim, it will be paid in full. Presumed to accept the Plan and not entitled to vote.** |

If there are any allowed priority unsecured claims as of the Effective Date, these claims will

be paid in full by the Reorganized Debtor on the Effective Date (or as soon as practicable thereafter). All allowed Section 507(a)(3), (4), (5), (6), or (7) priority unsecured claims, if any, will be characterized as Priority Claims.

**3.      Class of General Unsecured Claims.**

General Unsecured Claims are classified and treated as follows:

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|
| 5 | All General Unsecured Claims<br><br>Amount: Approximately $1.9 million (this number is subject to change based upon the resolution of Disputed Claims). | Yes. Impaired. | Holders of Allowed General Unsecured Claims shall be paid in full from the fourth quarter of 2025 through the fourth quarter of 2027 as set forth on the Cash Flow Projections.<br><br>Estimated recovery: 100% of their Allowed General Unsecured Claim.<br><br>The foregoing treatment is in full settlement and satisfaction of all obligations of the Debtor to holders of Claims in Class 5.<br><br>**Impaired; Entitled to Vote** |

**4.      Classes of Interest Holders.**

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor.  The following chart identifies this Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Yes/No) | TREATMENT |
|---|---|---|---|
| 6 | Equity Interests of Bernard Brucha | No. | The Debtor's sole shareholder and Chief Executive Officer, Bernard Brucha, will keep his shares of the Debtor and will continue to own 100% of the Debtor's shares. |

2995432

**D.    Means of Effectuating this Plan and Implementation of this Plan.**

    **1.    Plan Funding.**

    This Plan will be funded by the Debtor's ongoing business operations as set forth in the Cash Flow Projections attached hereto as **Exhibit A**. All of the Allowed Administrative Claims in this case will be paid over time as set forth in the Cash Flow Projections.  Allowed Secured Claims will be paid over time pursuant to their respective contracts with the Debtor.  Allowed Priority Claims and Allowed General Unsecured Claims will be paid in full as set forth in the Cash Flow Projections. The Debtor notes that the first payments to holders of Allowed General Unsecured Claims will not be made until the fourth quarter of 2025.

    Based on the foregoing, the Debtor is confident that sufficient funds will exist to satisfy all Allowed Claims as set forth in the Cash Flow Projection, which were prepared by the Debtor's financial advisor.

    **2.    Release of Liens.**

    Within 30 days of satisfaction of Secured Claims as set forth in this Plan, holders of such Claims shall file releases of their liens with the appropriate government agencies (the "Release Procedures").  In the event that the foregoing Claimants do not complete the Release Procedures, the Reorganized Debtor shall be granted, pursuant to the Confirmation Order, power of authority for the limited purpose of implementing and consummating the Release Procedures.

    **3.    Composition of the Reorganized Debtor and Post-Confirmation Management.**

    On the Effective Date, the Reorganized Debtor will remain a California corporation.  The Reorganized Debtor's Chief Executive Officer will remain Bernard Brucha.  Mr. Brucha will own 100% of the Reorganized Debtor as of the Effective Date.

    The Debtor currently anticipates that the management of the Reorganized Debtor immediately following the Effective Date will remain the same.  Mr. Brucha will remain the Reorganized Debtor's Chief Executive Officer.  Mr. Brucha's salary will remain at its current amount of $52,000 a year for the time being. However, to the extent the Debtor's "disposable income" is in excess of what is set forth in the Cash Flow Projections, Mr. Brucha reserves the right to increase his salary accordingly.

2995432

The Reorganized Debtor's Board of Directors will remain the same as it currently is, with the following directors: (1) Bernard Brucha; (2) Jennifer Murray; and (3) Mark Gullikson.

**4.        Disbursing Agent.**

The Reorganized Debtor will act as the Disbursing Agent for purposes of making all Distributions under the Plan.  The Disbursing Agent will serve without bond and will receive no compensation for distribution services and expenses incurred pursuant to the Plan.  The Disbursing Agent may employ others to assist it in making Distributions under the Plan.

**5.        Objections to Claims.**

The claims Bar Date in this Case was July 3, 2024 (and is October 21, 2024 for governmental entities).  Attached as **Exhibit B** is a Claim Chart, which identifies all of the Debtor's scheduled claims and all proofs of claims which have been timely filed against the Debtor.  Following Confirmation of the Plan, the Reorganized Debtor shall be the sole entity with the standing and authority to file objections to Claims in this Case, and shall have the right to file objections to all Claims which are inconsistent with the Debtor's books and records unless the Reorganized Debtor deems the inconsistency to be insignificant.  Any proof of claim that is filed with the Bankruptcy Court and/or served on the Debtor after the Effective Date will be deemed invalid unless the claimant files a motion for leave of Court to file such claim (without the need for the Reorganized Debtor to file an objection to such late-filed claim).  With respect to disputed claims which are not resolved prior to the Effective Date, the Reorganized Debtor shall have the authority, in its sole discretion, in the reasonable exercise of its business judgment to settle or compromise any Claim following the Effective Date by submitting a stipulation to the Bankruptcy Court without a notice or hearing thereon.

As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of Confirmation of the Plan.  The Bankruptcy Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, this Case and this Estate to resolve and to adjudicate any and all such objections to Claims which are commenced or continued following the Confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or

2995432

of any defense, the Debtor or the Reorganized Debtor may have with respect to any claim, or of any basis that the Reorganized Debtor Trustee may have to object to any such claim.

**Any Proof of Claim or Interest that is filed with the Bankruptcy Court and/or served on the Debtor or Reorganized Debtor after the Effective Date will be deemed invalid unless the Claimant files a motion for leave of Court to file such Claim.**

The Debtor specifically reserves the right to file objections to any and all Claims set forth in **Exhibit B** hereto. An order confirming the Plan shall not be *res judicata*, collateral estoppel, or other bar to the Reorganized Debtor's or other party in interest's right to object to such Claims after the Effective Date.

**6.    Investigation and Prosecution of Claims and Avoidance Actions.**

Under the Plan, creditors holding allowed General Unsecured Claims will be paid in full by the fourth quarter of 2027.  Therefore, any recoveries from preference litigation would be retained by the Reorganized Debtor and only indirectly benefit the Debtor's current General Unsecured Creditors.  The Debtor believes that such preference litigation would cause substantial ill-will against the Reorganized Debtor with its vendors, which the Debtor believes would negatively interfere with the Reorganized Debtor's business operations and reorganization efforts. Furthermore, the Debtor's finances prohibited it from paying many of its creditors during the preference period and the Debtor does not believe that any significant preferences were paid.  As a result, the Debtor has determined that neither the Debtor nor the Reorganized Debtor will pursue any preference litigation based on monetary transfers. Notwithstanding the foregoing, the Reorganized Debtor, as the representative of the Debtor's Estate and for the benefit of the Estate, shall have the right to pursue any preference actions based on non-monetary transfers.

**7.    Payment of Professional Fees and Expenses Incurred After the Effective Date.**

The Reorganized Debtor shall be entitled to employ such professionals that the Reorganized Debtor deems appropriate and to pay the fees and expenses incurred by such professionals in the ordinary course without any further order of the Bankruptcy Court.

**8.    Distributions to Be Made Pursuant to the Plan.**

Except as otherwise agreed to by the Reorganized Debtor in writing, Distributions to be

23

2995432

made to holders of Allowed Claims pursuant to the Plan may be delivered by regular mail, postage

prepaid, to the address shown in the Debtor's Schedules, as they may from time to time be amended

in accordance with Bankruptcy Rule 1000, or, if a different address is stated in a proof of claim duly

filed with the Bankruptcy Court, to such address.  Checks issued to pay Allowed Claims shall be null

and void if not negotiated within ninety (90) days after the date such check was mailed to the

intended recipient.  Those funds represented by voided checks that were not timely negotiated shall

become the property of the Reorganized Debtor.

**9.      Corporate Matters.**

Upon Entry of the Plan Confirmation Order, Bernard Brucha shall be the Reorganized

Debtor's 100% shareholder.  Therefore, entry of the Plan Confirmation Order shall constitute all

approvals, consents and actions required by any shareholder of the Debtor under applicable law, and

shall enable the Debtor or the Reorganized Debtor to execute any documents, instruments or

agreements, and to take all corporate and other actions that are specified in the Plan or the Plan

Confirmation Order that are necessary or appropriate to perform, implement and effectuate the Plan.

**10.     Exemption from Transfer Taxes.**

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a

security, or the making or delivery of an instrument of transfer under a plan confirmed under section

1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax.

Transfers under the Plan that are exempt from taxes under section 1146(c) of the Bankruptcy Code

include all transfers by the Debtor after the commencement of its chapter 11 case in contemplation

of the Plan but prior to the Effective Date, and all transfers to and by the Reorganized Debtor.  The

taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes,

transfer taxes, and other similar taxes.

**11.     Exculpations and Releases.**

To the maximum extent permitted by law, neither the Debtor, the Reorganized Debtor , nor

any of their successors and assigns, advisors, attorneys, employees, officers, directors, shareholders,

agents, members, representatives, or Professionals employed or retained by any of them whether or

not by Bankruptcy Court order, each in their capacity as such, shall have or incur liability to any

24

2995432

Person for an act taken or omitted to be taken in connection with, or related to formulating,

negotiating, soliciting, preparing, confirming, implementing, or consummating the Plan or the

transactions contemplated therein, or a contract, instrument, release or other agreement or document

created or entered into in connection with the Plan; provided, however, that each of the above

Persons shall be entitled to rely upon the advice of counsel concerning his or her duties pursuant to,

or in connection with, the Plan or any related document, instrument or agreement; provided further

that the foregoing exculpation shall have no effect on liability of any Person that results from any act

or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful

misconduct.

## 12.   **Executory Contracts and Unexpired Leases.**

a.   <u>Assumptions.</u>

The following is a list of the Debtor's executory contracts and unexpired leases which the

Debtor intends to assume on the Effective Date with the obligations of the Debtor to the other parties

to such executory contracts and unexpired leases to become obligations of the Reorganized Debtor.

Also set forth below is an itemization of the defaults which the Debtor contends exist and must be

cured in connection with the Debtor's assumption of such executory contracts and unexpired leases

(the "Cure Amounts"), unless the other parties to such executory contracts and unexpired leases

agree to the contrary. The Debtor estimates that the total Cure Amounts that the Reorganized Debtor

will be required to pay on the Effective Date will be $0.  The Confirmation Order will constitute a

Bankruptcy Court order approving the Debtor's assumption of all such executory contracts and

unexpired leases and fixing the Cure Amounts for each such executory contract and unexpired lease

in the amounts asserted by the Debtor as set forth below.

/ / /

/ / /

/ / /

**Non-Residential Real Property Lease To Be Assumed:[4]**

| Landlord | Landlord Address | Location Address | Cure Amount | Cure Terms |
|---|---|---|---|---|
| BSP VBP Propco, LLC | C/O | 7150 Village Drive, Buena Park, CA 90621 | $629,433.68 | Paid as set forth on the Cash Flow Projections.<br><br>The Debtor pays $37,500 per month for the period Nov 2024 – June 2025 (for a total of $300,000).<br><br>Studios pays $20,000 for Jan, Feb, March and April 2025 with a $11,433.68 payment for May 2025 (total of $91,433.68). |

**Executory Contracts/Unexpired Leases To Be Assumed:**

| Vendor/Lessor | Description | Vendor/Lessor Address | Cure Amount | Cure Terms |
|---|---|---|---|---|
| JPMorgan Chase Bank, NA | Equipment Financing Agreement | Collateral Mgmt Small Business PO Box 33035 Louisville, KY 40232 | $0 | N.A. |
| Toyota Financial Services | Vehicle Lease | 1230 Santa Monica Blvd. Santa Monica, CA 90404 | $0 | N/A |
| US Bank Equipment Finance | Equipment Financing Agreement | 1310 Madrid Street Marshal, MN 56258 | $0 | N/A |

To the extent that any of the other contracts listed on the Debtor's Schedule G, attached hereto as **Exhibit C**, qualify as "executory contracts", the Debtor intends to assume those agreements. The Debtor is current on the insurance agreements listed on Schedule G but believes that they do not qualify as "executory contracts."

      b.    Rejections.

The Debtor believes that it is assuming all of its executory contracts and unexpired leases.

---

[4] The Debtor and its landlord are in discussions with respect to the possibility of the Debtor consensually subletting to a third party and/or assigning the non-residential real property lease to a third party. The Debtor is not seeking to assume and assign the lease under the Plan (and is only seeking to assume the lease).

However, to the extent the Debtor is a party to any executory contract and/or unexpired lease that is not set forth in section a above, such executory contract or unexpired lease will be deemed rejected, and the Court order confirming the Plan will constitute a Court order approving the Debtor's rejection of all such executory contracts and unexpired leases.

            c.      <u>Cures.</u>

The Cure Amounts that the Debtor believes are required are set forth in the charts in section a above.  Any party who wishes to object to the Debtor's assumption of any of the unexpired leases or executory contracts and/or to the Cure Amounts of any defaults the Debtor believes exist must file a written objection with the Bankruptcy Court no later than 14 days prior to the date first set for the Plan Confirmation Hearing, and serve such objection on counsel to the Debtor.  The Bankruptcy Court may deem the failure of any party to file such a timely objection to constitute consent to the Debtor's assumption of the unexpired leases and executory contracts set forth above and to the Cure Amounts of any defaults the Debtor must cure in connection with the Debtor's assumption of these unexpired leases and executory contracts.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE WHICH IS REJECTED ON THE EFFECTIVE DATE SHALL BE THIRTY (30) DAYS AFTER THE EFFECTIVE DATE.  Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.  Any Allowed Claim resulting from the rejection of an unexpired lease or executory contract will be classified and treated as a Class 3 Allowed Claim.

      **13.**      **Risk Factors.**

The primary risk of implementing the Plan would be the Debtor's failure to confirm the Plan before the end of 2024 and the Debtor's business suffers as a result.  Once the Plan is confirmed, the primary risk is that the Debtor is unable to make the payments set forth on the Cash Flow Projections, in which case a creditor could file a motion to convert the case.   However, the Debtor believes that it will have sufficient cash flow to make such payments as set forth in **Exhibit A**.

2995432

**14.     Changes in Rates Subject to Regulatory Commission Approval.**

The Debtor is not subject to governmental regulatory commission approval of its rates.

**E.     Retention of Jurisdiction.**

Following the Confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court shall retain such jurisdiction as is legally permissible including for the following purposes:

1.     To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

2.     To determine the allowability, classification, or priority of Claims and to consider any objection to claim or interest whether such objection is filed before or after the Effective Date;

3.     To determine the extent, validity and priority of any lien asserted against any Asset or property of the Debtor or the Debtor's Estate;

4.     To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary or appropriate for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan and the Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this Case on or before the Effective Date;

5.     To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of Professionals for the period on or before the Effective Date;

6.     To determine any request for payment of administrative expenses;

7.     To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any Claims resulting therefrom;

8.     To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this Case whether before,

2995432

on, or after the Effective Date, including Claims, Causes of Action, and Avoidance Actions, and the

Reorganized Debtor shall have the right to commence in the Bankruptcy Court any Causes of

Action, including any Avoidance Actions, after the Effective Date, and to continue with the

prosecution in the Bankruptcy Court of any such claims, Causes of Action and Avoidance Actions

which were commenced but not completed by the Debtor prior to the Effective Date;

        9.     To determine such other matters and for such other purposes as may be

contemplated by the Plan or Confirmation Order;

        10.    To modify the Plan under Section 1127 of the Bankruptcy Code in order to

remedy any apparent defect or omission in the Plan, or to reconcile any inconsistency in the Plan, so

as to carry out its intents and purposes;

        11.    Except as otherwise provided in the Plan or the Confirmation Order, to issue

injunctions, to take such other actions, or make such other orders, as may be necessary or

appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or

implementation by any Person or other entity of the Plan or the Confirmation Order;

        12.    To issue such orders in aid of consummation, and in aid of implementation, of

the Plan and the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law,

with respect to any Person or entity, to the fullest extent authorized by the Bankruptcy Code or

Bankruptcy Rules; and

        13.    To enter a final decree closing the Case.

**F.    Miscellaneous Issues Regarding Plan Distribution.**

    **1.    No Fractional Distributions.**

    No Distributions in fractions of hundredths of U.S. Dollars ($0.00's) (i.e., cents) shall be

issued.  If the Distribution amount allocated to an Allowed Claim at the time of a Distribution

hereunder would include fractions of cents, the amount to be distributed to the holder of such Claim

shall be rounded down to the highest integral number of cents in the applicable Claim amount.

    **2.    Name and Address of Holder of Claim.**

    For purposes of all distributions under the Plan, the Disbursing Agent can rely on the name

and address of the holder of each Allowed Claim as shown on any timely filed proof of claim and, if

2995432

none, as shown on the Debtor's Schedules, except to the extent that the Disbursing Agent first receives adequate written notice of a change of address, properly executed by the Holder or its authorized agent.

**3.    Unclaimed Distribution.**

Any Unclaimed Distribution under the Plan shall be forfeited to the Reorganized Debtor.  An Unclaimed Distribution is any Distribution made by the Reorganized Debtor to the address of the recipient reflected in the Schedules (or on any Proof of Claim filed by the Claimant), by: (a) checks which have been returned as undeliverable without a proper forwarding address; (b) checks which were not mailed or delivered because of the absence of a proper address to which to mail or deliver the same; (c) checks which have not been cashed for a period of ninety (90) days after the date such checks were issued, or (d) disbursements that were not made because the Holder of such Allowed Claim failed to provide required tax information within forty-five (45) days after the Reorganized Debtor has sent any request for same to such Claimant's address as reflected in the Schedules and/or such Claimant's Proof of Claim.

# V.    EFFECT OF CONFIRMATION OF THE PLAN

**A.    Discharge.**

On the Effective Date, the Debtor will receive a discharge under the Plan pursuant to and in accordance with the provisions of Section 1141 of the Bankruptcy Code because there has not been a liquidation of all or substantially all of the property of the Debtor's Estate.  Pursuant to 11 U.S.C. §1141(d)(1)(A), Confirmation of the Plan will discharge "the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not – (i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title; (ii) such claim is allowed under section 502 of this title; or (iii) the holder of such claim has accepted the plan …".  11 U.S.C. §§ 1141(d)(1)(A)(i), (ii) and (iii).  **In other words, Confirmation of the Plan will effectuate a discharge as to all debts or liabilities, whether contingent, unliquidated, disputed, known or unknown, that were incurred or arose before Confirmation of the Plan.**  This includes all types of Claims and obligations arising out of and/or including, but not limited to, (i) all causes of action under state and Federal law (e.g., breach of

contract, breach of fiduciary duty, etc.), (ii) trade payables, (iii) landlord claims, (iv) tax Claims including interest, (v) environmental claims, and (vi) any other known or unknown Claim from any debt arising prior to Plan Confirmation.

The Plan shall bind the holders of all Claims whether or not they vote to accept the Plan.  The rights afforded in the Plan and the treatment of all Claims therein shall be in complete satisfaction, discharge and release of all Claims against the Debtor or its Assets of any nature whatsoever except as otherwise specifically provided in the Plan.  Except as set forth in the Plan, all Claims shall be forever satisfied, discharged and released in full on the Effective Date, and all holders of Claims shall be forever precluded and enjoined from asserting Claims against the Reorganized Debtor.  Any litigation pending prepetition and/or initiated postpetition in any court other than the Bankruptcy Court where relief from stay was not obtained from the Bankruptcy Court shall be deemed discharged upon Plan Confirmation and the occurrence of the Effective Date.

**B.    Continuing Stay/Injunction.**

The automatic stay is lifted upon the Effective Date as to property of the Estate.  However, the stay continues to prohibit collection or enforcement of prepetition Claims against the Reorganized Debtor or the Reorganized Debtor's property until the earlier of the date: (1) the Debtor's bankruptcy Case is closed, or (2) the Debtor's bankruptcy Case is dismissed.  Therefore, all parties bound by the Plan shall take no action with respect to, and are enjoined from, collecting or enforcing their prepetition Claims against the Reorganized debtor as set forth herein, and as otherwise provided by operation of law, until the earlier of the date that (1) the Debtor's bankruptcy Case is closed, or (2) the Debtor's bankruptcy Case is dismissed.

The Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an interest or other right of an equity holder that is impaired pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Debtor's

31

2995432

Estate, the Reorganized Debtor or its property on account of any such discharged Claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

**By accepting distribution pursuant to the Plan, each holder of an Allowed Claim receiving a Distribution pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.**

**C.      Revesting of Property in the Reorganized Debtor.**

Except as provided elsewhere in the Plan, the Confirmation of the Plan revests all of the property of the Debtor's Estate in the Reorganized Debtor.  From and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property, including payment of all business expenses and professional fees and expenses, and compromise and settle any claims or causes of actions without supervision or consent of the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Reorganized Debtor shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date as fully as if the Debtor's bankruptcy Case had not been commenced; and all of the Reorganized Debtor's legal and equitable rights respecting any such claims which are not specifically waived, extinguished, or relinquished by the Plan may be asserted after the Effective Date by the Reorganized Debtor.

**D.      Modification of the Plan.**

The Debtor may modify the Plan at any time before confirmation.  However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Debtor modifies the Plan before confirmation.  The Debtor or the Reorganized Debtor, as the case may be, may also seek to modify the Plan at any time after Confirmation of the Plan so long as (1) the Plan has not been

substantially consummated, and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**E.      Post-Confirmation Status Reports.**

Until a final decree closing the Debtor's Chapter 11 Case is entered, the Reorganized Debtor shall file a quarterly status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan and shall serve such status reports upon the OUST, counsel to the Debtor and those parties who have requested special notice.

**F.      Post-Confirmation Conversion/Dismissal.**

A Creditor or any other party in interest may bring a motion to convert or dismiss the Case under Section 1112(b) of the Bankruptcy Code after the Plan is confirmed if there is a default in performing the Plan.  If the Bankruptcy Court orders the Case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be re-imposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during this Case.  The Plan Confirmation Order may also be revoked under very limited circumstances.  The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

/ / /

/ / /

/ / /

33

2995432

**G.   Final Decree.**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor shall file a motion with the Bankruptcy Court to obtain a final decree to close this case.  The Reorganized Debtor shall be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

Dated: September 10, 2024                    MASHIndustries, Inc.

By:_____
    Behnad Brucha, CEO

BG Law LLP

By:__/s/ Susan K. Seflin_____
      Susan K. Seflin
Attorneys for Chapter 11 Debtor and Plan Proponent

34

2995432

**MASHindustries**
**Cash Flow Projection**

| | | 9/30/2024 | 10/31/2024 | 11/30/2024 | 12/31/2024 | TOTAL |
|---|---|---|---|---|---|---|
| **Receipts \| Customer Payments** | | | | | | |
| Commercial Income | (1) (2) | 811,548 | 721,131 | 884,351 | 794,749 | 3,211,779 |
| **Total Receipts** | | 811,548 | 721,131 | 884,351 | 794,749 | 3,211,779 |
| | | | | | | |
| **Disbursements** | | | | | | |
| Salaries / Guaranteed Payments (Weekly) | | | | | | |
| Payroll and ER Taxes /per payroll period | (3) | 255,553 | 256,381 | 302,755 | 242,204 | 1,056,892 |
| Payroll Fees | | 1,500 | 1,500 | 1,875 | 1,500 | 6,375 |
| Payroll /401K | | 12,925 | 15,397 | 1,243 | 995 | 30,560 |
| Total Salaries / Guaranteed Payments | | 269,978 | 273,278 | 305,873 | 244,698 | 1,093,827 |
| **Sales Tax** | | | | | | |
| Sales Tax | | 84,821 | 145,057 | - | - | 229,878 |
| Total Sales Tax | | 84,821 | 145,057 | - | - | 229,878 |
| **Direct Expense** | | | | | | |
| D/E Box Truck Vehicle Lease | | 2,675 | 2,675 | 2,675 | 2,675 | 10,700 |
| D/E Vehicle Fuel | | 1,250 | 1,250 | 1,250 | 1,250 | 5,000 |
| D/E Vehicle Repair/Maintenance/Supplies | (4) | 792 | 592 | 592 | 592 | 2,567 |
| D/E Shop Supplies | (4) | 1,000 | 1,000 | 1,000 | 1,000 | 4,000 |
| D/E EDCO Disposal | (4) | 1,107 | 1,107 | 1,107 | 1,107 | 4,428 |
| D/E Equipment Rental/Propane | (4) | 501 | 501 | 501 | 501 | 2,004 |
| D/E Small Tools | (4) | 1,331 | 1,331 | 1,331 | 1,331 | 5,324 |
| D/E Vendor Payments \| on project % complete | (5) | 162,310 | 144,226 | 176,870 | 158,950 | 642,356 |
| Total Direct Expense | | 170,965 | 152,682 | 185,326 | 167,405 | 676,378 |
| | | | | | | |
| **Overhead** | | | | | | |
| O/H Workers Compensation | (6) | 5,618 | 5,620 | 6,979 | 5,583 | 23,800 |
| O/H Health Benefits | (7) | 15,167 | 15,167 | 15,167 | 15,167 | 60,668 |
| O/H Corporate & General Liability Insurance | (8) | 6,535 | 6,535 | 6,535 | 6,535 | 26,140 |
| O/H Auto Insurance/Shop Trucks | (8) | 1,968 | 1,968 | 1,968 | 1,968 | 7,872 |
| O/H IT Services/Servers/Security/Data | | 3,500 | 3,500 | 3,500 | 3,500 | 14,000 |
| O/H Software/Licenses/NetSuite/Other | | 6,000 | 6,000 | 6,000 | 6,000 | 24,000 |
| O/H Internet/Data | | 1,390 | 1,390 | 1,390 | 1,390 | 5,560 |
| O/H Cellular Phones | | 2,075 | 2,075 | 2,075 | 2,075 | 8,300 |
| O/H Licenses and Fees | | 357 | 357 | 357 | 357 | 1,428 |
| O/H Office Supply/Expense/Postage | | 150 | 150 | 150 | 150 | 600 |
| O/H Equipment Rental/Copier | | 938 | 238 | 238 | 700 | 2,114 |
| O/H Utilities | | 9,000 | 8,500 | 7,500 | 7,000 | 32,000 |
| O/H Rent | | 84,925 | 84,925 | 84,925 | 84,925 | 339,699 |
| O/H Professional Services/Legal Fees | | 3,000 | 3,000 | - | - | 6,000 |
| O/H Overhead Miscellaneous Taxes and Fees | | - | - | - | - | |
| O/H Equipment Leases | | 7,394 | 7,394 | 7,394 | 7,394 | 29,574 |
| Moving Expenses | | | | | | |
| SBA Loan | (9) | 2,519 | 2,519 | 2,519 | 2,519 | 10,076 |
| Total Overhead | | 150,535 | 149,337 | 146,696 | 145,262 | 591,831 |
| | | | | | | |
| **Operating Disbursements Total** | | 676,299 | 720,355 | 637,895 | 557,366 | 2,591,915 |
| | | | | | | |
| **Operating Cash Generated/(Used)** | | 135,249 | 777 | 246,456 | 237,383 | 619,864 |
| | | | | | | |
| **Post-Petition Payment Arrangements** | | | | | | |
| Sales Tax \| Payment Plan | (10) | 2,982 | 2,982 | 2,982 | 2,982 | 11,929 |
| O/H Rent \| prior balance | (11) | - | - | 37,500 | 37,500 | 75,000 |
| Billd Exchange Stipulations | (12) | 27,580 | - | - | - | 27,580 |
| Total Post-Petition Payment Arrangements | | 30,562 | 2,982 | 40,482 | 40,482 | 114,509 |
| | | | | | | |
| **Total Cash Generated/Used After Post-Petition Arrangements** | | 104,687 | (2,206) | 205,974 | 196,901 | 505,356 |
| | | | | | | |
| **Restructuring Costs** | | | | | | |
| Legal (BG Law / Stretto) | | 50,000 | 50,000 | 30,000 | 30,000 | 160,000 |
| Stretto | | 20,370 | 2,000 | 2,000 | 2,000 | 26,370 |
| Financial Advisor (Broadway Advisors) | | 30,000 | 10,000 | - | - | 40,000 |
| Notice and Service | | | | - | - | |
| Subchapter V Trustee Fees | (13) | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 |
| Total Restructuring Costs | | 103,370 | 65,000 | 35,000 | 35,000 | 238,370 |
| | | | | | | |
| **Total Disbursements** | | 810,231 | 788,337 | 713,377 | 632,848 | 2,944,793 |
| **Total Cash Generated/(Used)** | | 1,317 | (67,206) | 170,974 | 161,901 | 266,986 |
| | | | | | | |
| **Less Working Capital Reserve** | (14) | | | | (266,986) | |
| Disposable Income | | | | | | |
| | | | | | | |
| **Cash Balance, Beginning** | | 67,000 | 68,317 | 1,111 | 172,085 | 67,000 |
| Plus Receipts | | 811,548 | 721,131 | 884,351 | 794,749 | 3,211,779 |
| Less Operating Disbursements | | (810,231) | (788,337) | (713,377) | (632,848) | (2,944,793) |
| Less Payments from Disposable Income | | - | - | - | - | |
| **Cash Balance, Ending** | (14) | 68,317 | 1,111 | 172,085 | 333,986 | 333,986 |
| | | | | | | |
| **Pre-Petition Claims** | | | | | | |
| **Priority Claim Balance, Beginning** | (15) | 189,701 | 186,719 | 183,736 | 180,754 | 189,701 |
| Less Payments from Disposable Income to POC-15 | (10) | (2,982) | (2,982) | (2,982) | (2,982) | (11,929) |
| Less Payments from Disposable Income to POC-21 | | | | | | |
| Less Payments from Disposable Income to POC-16 | | | | | | |
| **Priority Claim Balance, Remaining** | | 186,719 | 183,736 | 180,754 | 177,772 | 177,772 |
| | | | | | | |
| **General Unsecured Claim Balance, Beginning** | (16) | 2,485,153 | 2,457,573 | 2,457,573 | 2,420,073 | 2,485,153 |
| Less Payment of Landlord Cure Amount** | (11) (12) | (27,580) | - | (37,500) | (37,500) | (102,580) |
| Less Payments from Disposable Income | | | | | | |
| **General Unsecured Claim Balance, Remaining** | | 2,457,573 | 2,457,573 | 2,420,073 | 2,382,573 | 2,382,573 |

**The $238,000 payment to the Landlord in July 2025 will come from the Landlord applying the pre-petition deposit

Exhibit A_001

**MASHindustries**
**Cash Flow Projection**

| | | 1/31/2025 | 2/28/2025 | 3/31/2025 | 4/30/2025 | 5/31/2025 | 6/30/2025 | 7/31/2025 | 8/31/2025 |
|---|---|---|---|---|---|---|---|---|---|
| **Receipts \| Customer Payments** | | | | | | | | | |
| Commercial Income | (1) (2) | 614,073 | 676,321 | 904,307 | 770,129 | 600,685 | 750,628 | 707,656 | 823,770 |
| **Total Receipts** | | 614,073 | 676,321 | 904,307 | 770,129 | 600,685 | 750,628 | 707,656 | 823,770 |
| | | | | | | | | | |
| **Disbursements** | | | | | | | | | |
| Salaries / Guaranteed Payments (Weekly) | | | | | | | | | |
| Payroll and ER Taxes /per payroll period | (3) | 251,036 | 251,036 | 313,795 | 251,036 | 313,795 | 251,036 | 263,550 | 329,437 |
| Payroll Fees | | 1,500 | 1,500 | 1,875 | 1,500 | 1,875 | 1,500 | 1,500 | 1,875 |
| Payroll /401K | | 995 | 995 | 1,243 | 995 | 1,243 | 995 | 995 | 1,243 |
| **Total Salaries / Guaranteed Payments** | | 253,530 | 253,530 | 316,913 | 253,530 | 316,913 | 253,530 | 266,044 | 332,555 |
| **Sales Tax** | | | | | | | | | |
| Sales Tax | | 171,580 | - | - | 170,089 | - | - | 164,412 | - |
| **Total Sales Tax** | | 171,580 | - | - | 170,089 | - | - | 164,412 | - |
| **Direct Expense** | | | | | | | | | |
| D/E Box Truck Vehicle Lease | | 2,675 | 2,675 | 2,675 | 2,675 | 2,675 | 2,675 | 2,675 | 2,675 |
| D/E Vehicle Fuel | | 1,275 | 1,275 | 1,275 | 1,275 | 1,275 | 1,275 | 1,275 | 1,275 |
| D/E Vehicle Repair/Maintenance/Supplies | (4) | - | - | - | - | - | - | - | 200 |
| D/E Shop Supplies | (4) | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 | 1,020 |
| D/E EDCO Disposal | (4) | 1,129 | 1,129 | 1,129 | 1,129 | 1,129 | 1,129 | 1,129 | 1,129 |
| D/E Equipment Rental/Propane | (4) | 511 | 511 | 511 | 511 | 511 | 511 | 511 | 511 |
| D/E Small Tools | (4) | 1,358 | 1,358 | 1,358 | 1,358 | 1,358 | 1,358 | 1,358 | 1,358 |
| D/E Vendor Payments \| on project % complete | (5) | 122,815 | 135,264 | 180,861 | 154,026 | 120,137 | 150,126 | 141,531 | 164,754 |
| **Total Direct Expense** | | 130,782 | 143,232 | 188,829 | 161,994 | 128,105 | 158,093 | 149,499 | 172,922 |
| | | | | | | | | | |
| **Overhead** | | | | | | | | | |
| O/H Workers Compensation | (6) | 5,705 | 5,705 | 7,131 | 17,450 | 7,131 | 5,705 | 5,738 | 7,172 |
| O/H Health Benefits | (7) | 16,077 | 16,077 | 16,077 | 16,077 | 16,077 | 16,077 | 16,077 | 16,077 |
| O/H Corporate & General Liability Insurance | (8) | 6,862 | 6,862 | 6,862 | 6,862 | 24,862 | 6,862 | 6,862 | 6,862 |
| O/H Auto Insurance/Shop Trucks | (8) | 2,066 | 2,066 | 2,066 | 2,066 | 4,574 | 2,066 | 2,066 | 2,066 |
| O/H IT Services/Servers/Security/Data | | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| O/H Software/Licenses/NetSuite/Other | | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| O/H Internet/Data | | 1,390 | 1,390 | 1,390 | 1,390 | 1,390 | 1,390 | 1,390 | 1,390 |
| O/H Cellular Phones | | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 | 2,075 |
| O/H Licenses and Fees | | 357 | 357 | 357 | 357 | 357 | 357 | 357 | 357 |
| O/H Office Supply/Expense/Postage | | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 |
| O/H Equipment Rental/Copier | | 238 | 238 | 700 | 238 | 238 | 700 | 238 | 238 |
| O/H Utilities | | 7,000 | 7,000 | 7,000 | 7,500 | 7,500 | 7,500 | 7,500 | 9,000 |
| O/H Rent | | 84,925 | 84,925 | 84,925 | 86,925 | 137,053 | 86,925 | | |
| O/H Professional Services/Legal Fees | | - | - | - | - | - | - | - | 2,000 |
| O/H Overhead Miscellaneous Taxes and Fees | | | | | | | | | |
| O/H Equipment Leases | | 7,394 | 7,394 | 7,394 | 7,394 | 7,394 | 5,629 | 3,090 | 3,090 |
| Moving Expenses | | | | | | 250,128 | 200,000 | | |
| SBA Loan | (9) | 2,519 | 2,519 | 2,519 | 2,519 | 2,519 | 2,519 | 2,519 | 2,519 |
| **Total Overhead** | | 146,258 | 146,258 | 148,146 | 160,503 | 470,948 | 347,455 | 57,562 | 62,496 |
| | | | | | | | | | |
| **Operating Disbursements Total** | | 702,150 | 543,020 | 653,888 | 746,116 | 915,966 | 759,079 | 637,517 | 567,974 |
| | | | | | | | | | |
| **Operating Cash Generated/(Used)** | | (88,077) | 133,301 | 250,419 | 24,013 | (315,281) | (8,451) | 70,139 | 255,797 |
| | | | | | | | | | |
| **Post-Petition Payment Arrangements** | | | | | | | | | |
| Sales Tax \| Payment Plan | (10) | 2,982 | 2,982 | 2,982 | 2,982 | 2,982 | 2,982 | 2,982 | 2,982 |
| O/H Rent \| prior balance | (11) | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | 37,500 | - | - |
| Billd Exchange Stipulations | (12) | - | - | - | - | - | - | - | - |
| **Total Post-Petition Payment Arrangements** | | 40,482 | 40,482 | 40,482 | 40,482 | 40,482 | 40,482 | 2,982 | 2,982 |
| | | | | | | | | | |
| **Total Cash Generated/Used After Post-Petition Arrangements** | | (128,559) | 92,819 | 209,937 | (16,469) | (355,763) | (48,933) | 67,157 | 252,815 |
| | | | | | | | | | |
| **Restructuring Costs** | | | | | | | | | |
| Legal (BG Law / Stretto) | | 30,000 | | | | | | | |
| Stretto | | 4,000 | | | | | | | |
| Financial Advisor (Broadway Advisors) | | 30,000 | | | | | | | |
| Notice and Service | | | | | | | | | |
| Subchapter V Trustee Fees | (13) | 12,000 | | | | | | | |
| **Total Restructuring Costs** | | 76,000 | - | - | - | - | - | - | - |
| | | | | | | | | | |
| **Total Disbursements** | | 818,632 | 583,502 | 694,370 | 786,598 | 956,448 | 799,561 | 640,499 | 570,956 |
| **Total Cash Generated/(Used)** | | (204,559) | 92,819 | 209,937 | (16,469) | (355,763) | (48,933) | 67,157 | 252,815 |
| | | | | | | | | | |
| **Less Working Capital Reserve** | (14) | | | | | | | | |
| **Disposable Income** | | | | | | | | | |
| | | | | | | | | | |
| **Cash Balance, Beginning** | | 333,986 | 129,427 | 222,246 | 432,182 | 415,714 | 59,950 | 11,017 | 78,174 |
| Plus Receipts | | 614,073 | 676,321 | 904,307 | 770,129 | 600,685 | 750,628 | 707,656 | 823,770 |
| Less Operating Disbursements | | (818,632) | (583,502) | (694,370) | (786,598) | (956,448) | (799,561) | (640,499) | (570,956) |
| Less Payments from Disposable Income | | | | | | | | | |
| **Cash Balance, Ending** | (14) | 129,427 | 222,246 | 432,182 | 415,714 | 59,950 | 11,017 | 78,174 | 330,989 |
| | | | | | | | | | |
| **Pre-Petition Claims** | | | | | | | | | |
| **Priority Claim Balance, Beginning** | (15) | 177,772 | 174,790 | 171,808 | 168,826 | 165,843 | 162,861 | 159,879 | 156,897 |
| Less Payments from Disposable Income to POC-15 | (10) | (2,982) | (2,982) | (2,982) | (2,982) | (2,982) | (2,982) | (2,982) | (2,982) |
| Less Payments from Disposable Income to POC-21 | | | | | | | | | |
| Less Payments from Disposable Income to POC-16 | | | | | | | | | |
| **Priority Claim Balance, Remaining** | | 174,790 | 171,808 | 168,826 | 165,843 | 162,861 | 159,879 | 156,897 | 153,915 |
| | | | | | | | | | |
| **General Unsecured Claim Balance, Beginning** | (16) | 2,382,573 | 2,345,073 | 2,307,573 | 2,270,073 | 2,232,573 | 2,195,073 | 2,157,573 | 1,919,573 |
| Less Payment of Landlord Cure Amount** | (11) (12) | (37,500) | (37,500) | (37,500) | (37,500) | (37,500) | (37,500) | (238,000) | - |
| Less Payments from Disposable Income | | | | | | | | | |
| **General Unsecured Claim Balance, Remaining** | | 2,345,073 | 2,307,573 | 2,270,073 | 2,232,573 | 2,195,073 | 2,157,573 | 1,919,573 | 1,919,573 |

**The $238,000 payment to the Landlord in July 2025 will come from the Landlord

Printed On: 9/9/2024

**Exhibit A_002**

**MASHindustries**
**Cash Flow Projection**

| | | 9/30/2025 | 10/31/2025 | 11/30/2025 | 12/31/2025 | TOTAL |
|---|---|---|---|---|---|---|
| **Receipts | Customer Payments** | | | | | | |
| Commercial Income | (1) (2) | 897,827 | 617,142 | 865,827 | 544,914 | 8,773,280 |
| **Total Receipts** | | 897,827 | 617,142 | 865,827 | 544,914 | 8,773,280 |
| | | | | | | |
| **Disbursements** | | | | | | |
| Salaries / Guaranteed Payments (Weekly) | | | | | | |
| Payroll and ER Taxes /per payroll period | (3) | 263,550 | 263,550 | 329,437 | 263,550 | 3,344,807 |
| Payroll Fees | | 1,500 | 1,500 | 1,875 | 1,500 | 19,500 |
| Payroll /401K | | 995 | 995 | 1,243 | 995 | 12,929 |
| **Total Salaries / Guaranteed Payments** | | 266,044 | 266,044 | 332,555 | 266,044 | 3,377,236 |
| **Sales Tax** | | | | | | |
| Sales Tax | | - | 188,267 | - | - | 694,348 |
| **Total Sales Tax** | | - | 188,267 | - | - | 694,348 |
| **Direct Expense** | | | | | | |
| D/E Box Truck Vehicle Lease | | 2,675 | 2,675 | 2,675 | 2,675 | 32,100 |
| D/E Vehicle Fuel | (4) | 1,275 | 1,275 | 1,275 | 1,275 | 15,300 |
| D/E Vehicle Repair/Maintenance/Supplies | (4) | 400 | - | - | - | 600 |
| D/E Shop Supplies | (4) | 1,020 | 1,020 | 1,020 | 1,020 | 12,240 |
| D/E EDCO Disposal | (4) | 1,129 | 1,129 | 1,129 | 1,129 | 13,550 |
| D/E Equipment Rental/Propane | (4) | 511 | 511 | 511 | 511 | 6,132 |
| D/E Small Tools | (4) | 1,358 | 1,358 | 1,358 | 1,358 | 16,291 |
| D/E Vendor Payments | on project % complete | (5) | 179,565 | 123,428 | 173,165 | 108,983 | 1,754,656 |
| **Total Direct Expense** | | 187,933 | 131,396 | 181,133 | 116,951 | 1,850,869 |
| | | | | | | |
| **Overhead** | | | | | | |
| O/H Workers Compensation | (6) | 5,738 | 5,738 | 7,172 | 5,738 | 86,123 |
| O/H Health Benefits | (7) | 16,077 | 16,077 | 16,077 | 16,077 | 192,924 |
| O/H Corporate & General Liability Insurance | (8) | 6,862 | 6,862 | 6,862 | 6,862 | 100,343 |
| O/H Auto Insurance/Shop Trucks | (8) | 2,066 | 2,066 | 2,066 | 2,066 | 27,305 |
| O/H IT Services/Servers/Security/Data | | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 |
| O/H Software/Licenses/NetSuite/Other | | 6,000 | 6,000 | 6,000 | 6,000 | 72,000 |
| O/H Internet/Data | | 1,390 | 1,390 | 1,390 | 1,390 | 16,680 |
| O/H Cellular Phones | | 2,075 | 2,075 | 2,075 | 2,075 | 24,900 |
| O/H Licenses and Fees | | 357 | 357 | 357 | 357 | 4,284 |
| O/H Office Supply/Expense/Postage | | 150 | 150 | 150 | 150 | 1,800 |
| O/H Equipment Rental/Copier | | 700 | 238 | 238 | 700 | 4,704 |
| O/H Utilities | | 9,000 | 8,500 | 7,500 | 7,000 | 92,000 |
| O/H Rent | | 50,128 | 50,128 | 50,128 | 50,128 | 766,189 |
| O/H Professional Services/Legal Fees | | 2,000 | 2,000 | | | 6,000 |
| O/H Overhead Miscellaneous Taxes and Fees | | - | - | - | - | |
| O/H Equipment Leases | | 3,090 | 3,090 | 3,090 | 3,090 | 61,137 |
| Moving Expenses | | - | | | | 450,128 |
| SBA Loan | (9) | 2,519 | 2,519 | 2,519 | 2,519 | 30,228 |
| **Total Overhead** | | 111,652 | 110,690 | 109,125 | 107,652 | 1,978,745 |
| | | | | | | |
| **Operating Disbursements Total** | | 565,630 | 696,398 | 622,813 | 490,647 | 7,901,198 |
| | | | | | | |
| **Operating Cash Generated/(Used)** | | 332,198 | (79,256) | 243,014 | 54,267 | 872,082 |
| | | | | | | |
| **Post-Petition Payment Arrangements** | | | | | | |
| Sales Tax | Payment Plan | (10) | 2,982 | 2,982 | 2,982 | 2,982 | 35,786 |
| O/H Rent | prior balance | (11) | - | - | - | - | 225,000 |
| Billd Exchange Stipulations | (12) | - | - | - | - | - |
| **Total Post-Petition Payment Arrangements** | | 2,982 | 2,982 | 2,982 | 2,982 | 260,786 |
| | | | | | | |
| **Total Cash Generated/Used After Post-Petition Arrangements** | | 329,215 | (82,238) | 240,032 | 51,284 | 611,296 | # |
| | | | | | | |
| **Restructuring Costs** | | | | | | |
| Legal (BG Law / Stretto) | | | | | | 30,000 |
| Stretto | | | | | | 4,000 |
| Financial Advisor (Broadway Advisors) | | | | | | 30,000 |
| Notice and Service | | | | | | - |
| Subchapter V Trustee Fees | (13) | - | - | - | - | 12,000 |
| **Total Restructuring Costs** | | | | | | 76,000 |
| | | | | | | |
| **Total Disbursements** | | 568,612 | 699,380 | 625,796 | 493,629 | 8,237,984 |
| **Total Cash Generated/(Used)** | | 329,215 | (82,238) | 240,032 | 51,284 | 535,296 |
| | | | | | | |
| **Less Working Capital Reserve** | (14) | | | | (400,000) | |
| **Disposable Income** | | | | | | 469,282 |
| | | | | | | |
| **Cash Balance, Beginning** | | 330,989 | 660,204 | 577,966 | 817,998 | 333,986 |
| Plus Receipts | | 897,827 | 617,142 | 865,827 | 544,914 | 8,773,280 |
| Less Operating Disbursements | | (568,612) | (699,380) | (625,796) | (493,629) | (8,237,984) |
| Less Payments from Disposable Income | | - | - | - | (469,282) | (469,282) |
| **Cash Balance, Ending** | (14) | 660,204 | 577,966 | 817,998 | 400,000 | 400,000 |
| | | | | | | |
| **Pre-Petition Claims** | | | | | | |
| **Priority Claim Balance, Beginning** | (15) | 153,915 | 150,932 | 147,950 | 144,968 | 177,772 |
| Less Payments from Disposable Income to POC-15 | (10) | (2,982) | (2,982) | (2,982.18) | (135,543) | (168,347) |
| Less Payments from Disposable Income to POC-21 | | | | | (6,555) | (6,555) |
| Less Payments from Disposable Income to POC-16 | | | | | (2,870) | (2,870) |
| **Priority Claim Balance, Remaining** | | 150,932 | 147,950 | 144,968 | - | - |
| | | | | | | |
| **General Unsecured Claim Balance, Beginning** | (16) | 1,919,573 | 1,919,573 | 1,919,573 | 1,919,573 | 2,382,573 |
| Less Payment of Landlord Cure Amount** | (11) (12) | | | | | (463,000) |
| Less Payments from Disposable Income | | | | | (324,314) | (324,314) |
| | | | | | | |
| **General Unsecured Claim Balance, Remaining** | | 1,919,573 | 1,919,573 | 1,919,573 | 1,595,259 | 1,595,259 |

**The $238,000 payment to the Landlord in July 2025 will come from the Landlord

Printed On: 9/9/2024

**Exhibit A_003**

**MASHindustries**
**Cash Flow Projection**

| | | Q1 2026 | Q2 2026 | Q3 2026 | Q4 2026 | TOTAL |
|---|---|---|---|---|---|---|
| **Receipts \| Customer Payments** | | | | | | |
| Commercial Income | (1) (2) | 2,056,080 | 2,068,258 | 1,822,791 | 2,925,747 | 8,872,876 |
| **Total Receipts** | | 2,056,080 | 2,068,258 | 1,822,791 | 2,925,747 | 8,872,876 |
| | | | | | | |
| **Disbursements** | | | | | | |
| Salaries / Guaranteed Payments (Weekly) | | | | | | |
| Payroll and ER Taxes /per payroll period | (3) | 889,240 | 889,240 | 889,240 | 889,240 | 3,556,960 |
| Payroll Fees | | 4,875 | 4,875 | 4,875 | 4,875 | 19,500 |
| Payroll /401K | | 3,232 | 3,232 | 3,232 | 3,232 | 12,929 |
| **Total Salaries / Guaranteed Payments** | | 897,347 | 897,347 | 897,347 | 897,347 | 3,589,389 |
| **Sales Tax** | | | | | | |
| Sales Tax | | 42,231 | 159,346 | 160,290 | 141,266 | 503,133 |
| **Total Sales Tax** | | 42,231 | 159,346 | 160,290 | 141,266 | 503,133 |
| **Direct Expense** | | | | | | |
| D/E Box Truck Vehicle Lease | | 8,025 | 8,025 | 8,025 | 8,025 | 32,100 |
| D/E Vehicle Fuel | | 3,902 | 3,902 | 3,902 | 3,902 | 15,606 |
| D/E Vehicle Repair/Maintenance/Supplies | (4) | - | - | 600 | - | 600 |
| D/E Shop Supplies | (4) | 3,121 | 3,121 | 3,121 | 3,121 | 12,485 |
| D/E EDCO Disposal | (4) | 3,455 | 3,455 | 3,455 | 3,455 | 13,821 |
| D/E Equipment Rental/Propane | (4) | 1,564 | 1,564 | 1,564 | 1,564 | 6,255 |
| D/E Small Tools | (4) | 4,154 | 4,154 | 4,154 | 4,154 | 16,617 |
| D/E Vendor Payments \| on project % complete | (5) | 514,020 | 517,064 | 455,698 | 731,437 | 2,218,219 |
| **Total Direct Expense** | | 538,241 | 541,285 | 480,519 | 755,658 | 2,315,703 |
| | | | | | | |
| **Overhead** | | | | | | |
| O/H Workers Compensation | (6) | 20,240 | 31,985 | 20,240 | 20,240 | 92,704 |
| O/H Health Benefits | (7) | 51,125 | 51,125 | 51,125 | 51,125 | 204,500 |
| O/H Corporate & General Liability Insurance | (8) | 21,821 | 39,821 | 21,822 | 21,822 | 105,287 |
| O/H Auto Insurance/Shop Trucks | (8) | 6,571 | 9,079 | 6,570 | 6,570 | 28,790 |
| O/H IT Services/Servers/Security/Data | | 10,500 | 10,500 | 10,500 | 10,500 | 42,000 |
| O/H Software/Licenses/NetSuite/Other | | 18,000 | 18,000 | 18,000 | 18,000 | 72,000 |
| O/H Internet/Data | | 4,170 | 4,170 | 4,170 | 4,170 | 16,680 |
| O/H Cellular Phones | | 6,225 | 6,225 | 6,225 | 6,225 | 24,900 |
| O/H Licenses and Fees | | 1,071 | 1,071 | 1,071 | 1,071 | 4,284 |
| O/H Office Supply/Expense/Postage | | 450 | 450 | 450 | 450 | 1,800 |
| O/H Equipment Rental/Copier | | 1,176 | 1,176 | 1,176 | 1,176 | 4,704 |
| O/H Utilities | | 21,000 | 22,500 | 25,500 | 23,000 | 92,000 |
| O/H Rent | | 150,385 | 104,703 | 163,725 | 163,725 | 582,539 |
| O/H Professional Services/Legal Fees | | - | - | 4,000 | 2,000 | 6,000 |
| O/H Overhead Miscellaneous Taxes and Fees | | | | | | |
| O/H Equipment Leases | | 9,270 | 3,090 | - | - | 12,360 |
| Moving Expenses | | | | | | |
| SBA Loan | (9) | 7,557 | 7,557 | 7,557 | 7,557 | 30,228 |
| **Total Overhead** | | 329,561 | 311,453 | 342,131 | 337,631 | 1,320,775 |
| | | | | | | |
| **Operating Disbursements Total** | | 1,807,380 | 1,909,432 | 1,880,287 | 2,131,902 | 7,729,000 |
| | | | | | | |
| **Operating Cash Generated/(Used)** | | 248,700 | 158,826 | (57,496) | 793,845 | 1,143,875 |
| | | | | | | |
| **Post-Petition Payment Arrangements** | | | | | | |
| Sales Tax \| Payment Plan | (10) | - | - | - | - | - |
| O/H Rent \| prior balance | (11) | - | - | - | - | - |
| Billd Exchange Stipulations | (12) | - | - | - | - | - |
| **Total Post-Petition Payment Arrangements** | | - | - | - | - | - |
| | | | | | | |
| **Total Cash Generated/Used After Post-Petition Arrangements** | | 248,700 | 158,826 | (57,496) | 793,845 | 1,143,875 |
| | | | | | | |
| **Restructuring Costs** | | | | | | |
| Legal (BG Law / Stretto) | | | | | | - |
| Stretto | | | | | | - |
| Financial Advisor (Broadway Advisors) | | | | | | - |
| Notice and Service | | | | | | - |
| Subchapter V Trustee Fees | (13) | - | - | - | - | - |
| **Total Restructuring Costs** | | | | | | |
| | | | | | | |
| **Total Disbursements** | | 1,807,380 | 1,909,432 | 1,880,287 | 2,131,902 | 7,729,000 |
| **Total Cash Generated/(Used)** | | 248,700 | 158,826 | (57,496) | 793,845 | 1,143,875 |
| | | | | | | |
| **Less Working Capital Reserve** | (14) | | | | (400,000) | |
| **Disposable Income** | | | | | | 1,143,875 |
| | | | | | | |
| **Cash Balance, Beginning** | | 400,000 | 648,700 | 807,527 | 750,031 | 400,000 |
| Plus Receipts | | 2,056,080 | 2,068,258 | 1,822,791 | 2,925,747 | 8,872,876 |
| Less Operating Disbursements | | (1,807,380) | (1,909,432) | (1,880,287) | (2,131,902) | (7,729,000) |
| Less Payments from Disposable Income | | | | | (1,143,875) | (1,143,875) |
| **Cash Balance, Ending** | (14) | 648,700 | 807,527 | 750,031 | 400,000 | 400,000 |
| | | | | | | |
| **Pre-Petition Claims** | | | | | | |
| **Priority Claim Balance, Beginning** | (15) | - | - | - | - | - |
| Less Payments from Disposable Income to POC-15 | (10) | - | - | - | - | - |
| Less Payments from Disposable Income to POC-21 | | - | - | - | - | - |
| Less Payments from Disposable Income to POC-16 | | | | | | |
| **Priority Claim Balance, Remaining** | | - | - | - | - | - |
| | | | | | | |
| **General Unsecured Claim Balance, Beginning** | (16) | 1,595,259 | 1,595,259 | 1,595,259 | 1,595,259 | 1,595,259 |
| Less Payment of Landlord Cure Amount** | (11) (12) | - | - | - | - | - |
| Less Payments from Disposable Income | | - | - | - | (1,143,875) | (1,143,875) |
| **General Unsecured Claim Balance, Remaining** | | 1,595,259 | 1,595,259 | 1,595,259 | 451,384 | 451,384 |

**The $238,000 payment to the Landlord in July 2025 will come from the Landlord

Printed On: 9/9/2024

**Exhibit A_004**

**MASHindustries**
**Cash Flow Projection**

| | | Q1 2027 | Q2 2027 | Q3 2027 | Q4 2027 | TOTAL |
|---|---|---|---|---|---|---|
| **Receipts | Customer Payments** | | | | | | |
| Commercial Income | (1) (2) | 1,892,661 | 2,058,746 | 2,305,603 | 2,939,058 | 9,196,069 |
| **Total Receipts** | | 1,892,661 | 2,058,746 | 2,305,603 | 2,939,058 | 9,196,069 |
| **Disbursements** | | | | | | |
| Salaries / Guaranteed Payments (Weekly) | | | | | | |
| Payroll and ER Taxes /per payroll period | (3) | 904,466 | 904,466 | 904,466 | 904,466 | 3,617,863 |
| Payroll Fees | | 4,875 | 4,875 | 4,875 | 4,875 | 19,500 |
| Payroll /401K | | 3,232 | 3,232 | 3,232 | 3,232 | 12,929 |
| **Total Salaries / Guaranteed Payments** | | 912,573 | 912,573 | 912,573 | 912,573 | 3,650,292 |
| **Sales Tax** | | | | | | |
| Sales Tax | | 226,745 | 146,681 | 159,553 | 178,684 | 711,664 |
| **Total Sales Tax** | | 226,745 | 146,681 | 159,553 | 178,684 | 711,664 |
| **Direct Expense** | | | | | | |
| D/E Box Truck Vehicle Lease | | 5,350 | - | - | - | 5,350 |
| D/E Vehicle Fuel | (4) | 3,980 | 3,980 | 3,980 | 3,980 | 15,918 |
| D/E Vehicle Repair/Maintenance/Supplies | (4) | - | - | 600 | - | 600 |
| D/E Shop Supplies | (4) | 3,184 | 3,184 | 3,184 | 3,184 | 12,734 |
| D/E EDCO Disposal | (4) | 3,524 | 3,524 | 3,524 | 3,524 | 14,097 |
| D/E Equipment Rental/Propane | (4) | 1,595 | 1,595 | 1,595 | 1,595 | 6,380 |
| D/E Small Tools | (4) | 4,237 | 4,237 | 4,237 | 4,237 | 16,950 |
| D/E Vendor Payments | on project % complete | (5) | 473,165 | 514,687 | 576,401 | 734,764 | 2,299,017 |
| **Total Direct Expense** | | 495,035 | 531,206 | 593,521 | 751,284 | 2,371,046 |
| **Overhead** | | | | | | |
| O/H Workers Compensation | (6) | 20,624 | 32,369 | 20,624 | 20,624 | 94,241 |
| O/H Health Benefits | (7) | 54,192 | 54,192 | 54,192 | 54,192 | 216,770 |
| O/H Corporate & General Liability Insurance | (8) | 23,131 | 41,131 | 23,131 | 23,131 | 110,525 |
| O/H Auto Insurance/Shop Trucks | (8) | 6,964 | 11,981 | 14,489 | 14,489 | 47,924 |
| O/H IT Services/Servers/Security/Data | | 10,500 | 10,500 | 10,500 | 10,500 | 42,000 |
| O/H Software/Licenses/NetSuite/Other | | 18,000 | 18,000 | 18,000 | 18,000 | 72,000 |
| O/H Internet/Data | | 4,170 | 4,170 | 4,170 | 4,170 | 16,680 |
| O/H Cellular Phones | | 6,225 | 6,225 | 6,225 | 6,225 | 24,900 |
| O/H Licenses and Fees | | 1,071 | 1,071 | 1,071 | 1,071 | 4,284 |
| O/H Office Supply/Expense/Postage | | 450 | 450 | 450 | 450 | 1,800 |
| O/H Equipment Rental/Copier | | 1,176 | 1,176 | 1,176 | 1,176 | 4,704 |
| O/H Utilities | | 21,000 | 22,500 | 25,500 | 23,000 | 92,000 |
| O/H Rent | | 163,725 | 110,707 | 168,395 | 168,395 | 611,221 |
| O/H Professional Services/Legal Fees | | - | - | 4,000 | 2,000 | 6,000 |
| O/H Overhead Miscellaneous Taxes and Fees | | - | - | - | - | - |
| O/H Equipment Leases | | - | | | | - |
| Moving Expenses | | - | | | | |
| SBA Loan | (9) | 7,557 | 7,557 | 7,557 | 7,557 | 30,228 |
| **Total Overhead** | | 338,786 | 322,029 | 359,481 | 354,981 | 1,375,277 |
| **Operating Disbursements Total** | | 1,973,140 | 1,912,490 | 2,025,127 | 2,197,522 | 8,108,280 |
| **Operating Cash Generated/(Used)** | | (80,479) | 146,256 | 280,476 | 741,535 | 1,087,789 |
| **Post-Petition Payment Arrangements** | | | | | | |
| Sales Tax | Payment Plan | (10) | - | - | - | - | - |
| O/H Rent | prior balance | (11) | - | - | - | - | - |
| Billd Exchange Stipulations | (12) | - | - | - | - | - |
| **Total Post-Petition Payment Arrangements** | | - | - | - | - | - |
| **Total Cash Generated/Used After Post-Petition Arrangements** | | (80,479) | 146,256 | 280,476 | 741,535 | 1,087,789 |
| **Restructuring Costs** | | | | | | |
| Legal (BG Law / Stretto) | | | | | - | - |
| Stretto | | | | | - | - |
| Financial Advisor (Broadway Advisors) | | | | | - | - |
| Notice and Service | | | | | - | - |
| Subchapter V Trustee Fees | (13) | - | - | - | - | - |
| **Total Restructuring Costs** | | | | | | |
| **Total Disbursements** | | 1,973,140 | 1,912,490 | 2,025,127 | 2,197,522 | 8,108,280 |
| **Total Cash Generated/(Used)** | | (80,479) | 146,256 | 280,476 | 741,535 | 1,087,789 |
| **Less Working Capital Reserve** | (14) | | | | (400,000) | |
| **Disposable Income** | | | | | | 1,087,789 |
| **Cash Balance, Beginning** | | 400,000 | 319,521 | 465,778 | 746,254 | 400,000 |
| Plus Receipts | | 1,892,661 | 2,058,746 | 2,305,603 | 2,939,058 | 9,196,069 |
| Less Operating Disbursements | | (1,973,140) | (1,912,490) | (2,025,127) | (2,197,522) | (8,108,280) |
| Less Payments from Disposable Income | | | | | (451,384) | (451,384) |
| **Cash Balance, Ending** | (14) | 319,521 | 465,778 | 746,254 | 1,036,405 | 1,036,405 |
| **Pre-Petition Claims** | | | | | | |
| **Priority Claim Balance, Beginning** | (15) | - | - | - | - | - |
| Less Payments from Disposable Income to POC-15 | (10) | - | - | - | - | |
| Less Payments from Disposable Income to POC-21 | | - | | | | |
| Less Payments from Disposable Income to POC-16 | | - | | | | |
| **Priority Claim Balance, Remaining** | | - | - | - | - | - |
| **General Unsecured Claim Balance, Beginning** | (16) | 451,384 | 451,384 | 451,384 | 451,384 | 451,384 |
| Less Payment of Landlord Cure Amount** | (11) (12) | - | - | - | - | - |
| Less Payments from Disposable Income | | | | | (451,384) | (451,384) |
| **General Unsecured Claim Balance, Remaining** | | 451,384 | 451,384 | 451,384 | - | - |

**The $238,000 payment to the Landlord in July 2025 will come from the Landlord

Printed On: 9/9/2024

**Exhibit A_005**

| | **MASHindustries**<br>**Cash Flow Projection**<br>**Assumptions** |
|---|---|
| (1) | Cash Receipts for the period September 2024 - February 2025 reflect progress payments as outlined in existing contracts that are currently active or scheduled to start by December 2024. |
| (2) | Subsequent Cash Receipts are projected based on historical revenue projected to grow at 15% year over year based upon existing bids, historical revenue trends, industry growth rates, and Debtor's experience within the industry. |
| (3) | Payroll and ER taxes are based on current labor force and reflect cost of living increases of 2% annually in addition to adjustments to labor in order to achieve projected revenue growth. |
| (4) | Direct expenses are projected based on historical monthly average and increase by 2% annually. |
| (5) | Vendor payments reflect material purchases based upon a historical average of 20% of contract value. |
| (6) | Workers compensation projected based on Payroll and ER Taxes at a rate of 6.67% for manufacturing and .26% for all other employees. |
| (7) | Health benefits are based on current Payroll and ER Taxes and increase 6% annually. |
| (8) | Insurance based on current policies and increase 5% annually. |
| (9) | Repayment of SBA Loan is scheduled to begin August 2024. Per loan agreement the loan amount is $499K at an interest rate of 3.75% and repayment period of 30 Years. |
| (10) | Per a pre-petition payment agreement regarding 2023 Sales & Use Tax, amount includes monthly payment of $2,982 for the period September 2024 through December 2025 with an additional payment from disposable income in December 2025 in the amount of $144,968. |
| (11) | Payment on past due rent totals $629,433.78. Reflects monthly payment of $37,500 for period Nov 2024 through June 2025 (total $300,000) plus lump sum of $238,000 in June 2025. Landlord may apply the security deposit to the lump sum without further authorization from the Court. Difference of $91,433.68 will be paid by MASH Studios in monthly installments during the period Jan 2025 - Apr 2025. |
| (12) | Reflect pre-petition payments in accordance with Stipulations approved by the Court. |
| (13) | Projected based upon fees for Subchapter V Trustee. |
| (14) | Reflects working capital reserve of $400,000, if available. |
| (15) | Priority claims consist of $186K in miscellaneous taxes and a $2,870 in wage claims. |
| (16) | Amount reflects total general unsecured claims of $8.9 Million less $6.4 Million claim from Insider MASH studios. In addition to the general unsecured claims scheduled, there were 26 proof of claims submitted which include a $341K claim related to an unliquidated scheduled claim listed as Undertermined,  $68K trade claim, and $35K early termination fee. |

**Exhibit A_006**

| | | | | | | | | SCHEDULED CLAIMS | PROOF OF CLAIMS | | | PROPOSED ALLOWED CLAIM AMOUNTS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ID | Creditor's Name | Date Incurred | Basis for Claim | Contingent | Unliquidated | Disputed | Is the Claim Subject to Offset? (Yes/No) | Scheduled Claim Amount | Secured | Priority | General Unsecured | Post - Petition Payments Pursuant to Stipulation | Secured | Priority | General Unsecured | Total Claim Amount | Objection? |
| 3.001 | Amazon Business | Various | Trade Claim | | | | No | 36.42 | | | | | | | 36.42 | 36.42 | |
| 3.002 | American Express | Various | Credit Card | | | | No | 17,963.63 | | | | | | | 17,963.63 | 17,963.63 | |
| POC 11 | Arc Air Logistics Inc. | | | | | | | | | | 7,167.04 | | | | 7,167.04 | 7,167.04 | Y |
| 3.003 | Architectural Millwork Installers Inc | 3/25/2024 | Trade Claim | | | | No | 6,220.00 | | | | | | | 6,220.00 | 6,220.00 | |
| 3.004 | AT&T | 3/11/2024 | Trade Claim | | | | No | 366.91 | | | | | | | 366.91 | 366.91 | |
| 3.005 | Atlas Sheet Metal, Inc | 8/16/2023 | Trade Claim | | | | No | 3,080.00 | | | | | | | 3,080.00 | 3,080.00 | |
| POC 17 | Baresque USA LLC | | | | | | | | | | 68,070.00 | | | | 68,070.00 | 68,070.00 | Y |
| 3.006 | Bay Alarm Company | Various | Trade Claim | | | | No | 1,096.13 | | | | | | | 1,096.13 | 1,096.13 | |
| 3.007 | Biesse America Inc | Various | Trade Claim | | | | No | 795.99 | | | | | | | 795.99 | 795.99 | |
| 3.008 | Big Red Machine Shop | Various | Trade Claim | | | | No | 1,986.00 | | | | | | | 1,986.00 | 1,986.00 | |
| 3.009 | Billd Exchange LLC | Undetermined | Unsecured Debt | | | | No | 480,714.29 | | | | | | | - | - | |
| POC 19 | Billd Exchange LLC | | | | | | | | | | 492,471.79 | (162,053.60) | | | 330,418.19 | 330,418.19 | |
| 3.010 | BSP VBP PROPCO LLC | Various | Trade Claim | | x | | No | 630,847.22 | | | | | | | 629,433.68 | 629,433.68 | |
| 3.011 | CALIFORNIA BUILDING CARE INC | 9/30/2022 | Trade Claim | | | | No | 7,515.00 | | | | | | | 7,515.00 | 7,515.00 | |
| POC 15 | California Dept. of Tax and Fee Administration | | | | | | | | | 180,275.48 | | | | 180,275.48 | - | 180,275.48 | |
| 3.012 | California Timberline Inc | Various | Trade Claim | | | | No | 14,917.55 | | | | | | | 14,917.55 | 14,917.55 | |
| 3.013 | Charles McMurray Company | 3/27/2024 | Trade Claim | | | | No | 479.52 | | | | | | | 479.52 | 479.52 | |
| POC 21 | City of Los Angeles | | | | | | | | | 6,555.08 | | | | 6,555.08 | - | 6,555.08 | |
| 3.014 | Coast To Coast Metal Finishing Corp | Various | Trade Claim | | | | No | 1,087.00 | | | | | | | 1,087.00 | 1,087.00 | |
| 3.015 | Custom Installations | Various | Trade Claim | | | | No | 3,928.88 | | | | | | | 3,928.88 | 3,928.88 | |
| POC 16 | Dolores Cadena | | | | | | | | | 2,870.20 | | | | 2,870.20 | - | 2,870.20 | Y |
| 3.016 | E.B. Bradley | Various | Trade Claim | | | | No | 5,267.52 | | | | | | | 5,267.52 | 5,267.52 | |
| 3.017 | Fantastic Wood Coatings | 1/19/2024 | Trade Claim | | | | No | 4,010.95 | | | | | | | - | - | |
| POC 06 | Fantastic Wood Coatings | | | | | | | | | | 4,010.95 | | | | 4,010.95 | 4,010.95 | |
| 3.018 | Flores Marble & Granite | 7/10/2023 | Trade Claim | | | | No | 4,400.00 | | | | | | | 4,400.00 | 4,400.00 | |
| 3.019 | Forest Plywood Co. | Various | Trade Claim | | | | No | 22,411.90 | | | | | | | 22,411.90 | 22,411.90 | |
| 3.020 | Frama-Tech Inc. | Various | Trade Claim | | | | No | 3,814.23 | | | | | | | - | - | |
| POC 24 | Frama-Tech Inc. | | | | | | | | | | 4,527.21 | | | | 4,527.21 | 4,527.21 | |
| 3.021 | Frank Recruitment Group | Various | Trade Claim | | x | | No | 73,706.91 | | | | | | | - | - | |
| POC 08 | Frank Recruitment Group | | | | | | | | | | 65,140.00 | | | | 65,140.00 | 65,140.00 | |
| 3.022 | G&G Millwood Installation Inc. | Various | Trade Claim | | | | No | 7,100.00 | | | | | | | 7,100.00 | 7,100.00 | |
| 3.023 | GL Veneer Company, Inc. | Various | Trade Claim | | | | No | 132,723.51 | | | | | | | - | - | |
| POC 18 | GL Veneer Company, Inc. | | | | | | | | | | 129,705.60 | | | | 129,705.60 | 129,705.60 | |
| 3.024 | GLC MILLWORKS | 1/15/1901 | Trade Claim | | | | No | 381.00 | | | | | | | 381.00 | 381.00 | |
| 3.025 | Go To Communications, Inc | 10/1/2023 | Trade Claim | | | | No | 403.61 | | | | | | | 403.61 | 403.61 | |
| 3.026 | Grainger Industrial Supply | Various | Trade Claim | | | | No | 1,879.20 | | | | | | | 1,879.20 | 1,879.20 | |
| 3.027 | Hardwoods Specialty Products US LP | Various | Trade Claim | | | | No | 234.68 | | | | | | | 234.68 | 234.68 | |
| 3.028 | Haskell & White LLP | Various | Trade Claim | | | | No | 8,675.00 | | | | | | | 8,675.00 | 8,675.00 | |
| 3.029 | Hedrick Fire Protection | 11/27/2023 | Trade Claim | | | | No | 673.25 | | | | | | | 673.25 | 673.25 | |
| 3.030 | Hexagon Manufacturing Intelligence Inc | 7/24/2023 | Trade Claim | | | | No | 1,675.00 | | | | | | | 1,675.00 | 1,675.00 | |
| 3.031 | Highland Lumber Sales, Inc | 12/15/2023 | Trade Claim | | | | No | 1,073.95 | | | | | | | 1,073.95 | 1,073.95 | |
| 3.032 | Humanscale Corporation | 1/3/2024 | Trade Claim | | | | No | 377.39 | | | | | | | 377.39 | 377.39 | |
| 3.033 | IDS Interior Detail Solution | Various | Trade Claim | | | | No | 12,485.00 | | | | | | | 12,485.00 | 12,485.00 | |
| POC 07 | Internal Revenue Service | | | | | | | | | 100.00 | | | | 100.00 | - | 100.00 | |
| 3.034 | JPMorgan Chase Bank, NA | Various | Credit Card | | | | No | 129,048.43 | | | | | | | - | - | |
| POC 13 | JPMorgan Chase Bank, NA | | | | | | | | | | 129,048.43 | | | | 129,048.43 | 129,048.43 | |
| POC 23 | JPMorgan Chase Bank, NA | | | | | | | | 57,994.90 | | | | 57,994.90 | | | - | 57,994.90 | |
| 3.035 | Kairos Tooling | Various | Trade Claim | | | | No | 2,842.35 | | | | | | | 2,842.35 | 2,842.35 | |
| 3.036 | L&W SUPPLY | Various | Trade Claim | | | | No | 1,257.25 | | | | | | | 1,257.25 | 1,257.25 | |
| 3.037 | Leuco Tool Corporation | Various | Trade Claim | | | | No | 3,333.94 | | | | | | | 3,333.94 | 3,333.94 | |
| 3.038 | Mash Studios, Inc. | Various | Intercompany Payable | | | | No | 6,440,237.24 | | | | | | | 6,440,237.24 | 6,440,237.24 | |
| 3.039 | McMaster-Carr Supply Co. | Various | Trade Claim | | | | No | 4,471.35 | | | | | | | - | - | |
| POC 04 | McMaster-Carr Supply Co. | | | | | | | | | | 4,471.35 | | | | 4,471.35 | 4,471.35 | |
| 3.040 | Nace Sheet Metal Corp | 2/13/2024 | Trade Claim | | | | No | 500.00 | | | | | | | 500.00 | 500.00 | |
| 3.041 | National Marble & Architectural Stone, Inc | Various | Trade Claim | | | | No | 24,860.00 | | | | | | | 24,860.00 | 24,860.00 | |

**Exhibit B_001**

| | | | | | | | | SCHEDULED CLAIMS | PROOF OF CLAIMS | | | PROPOSED ALLOWED CLAIM AMOUNTS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ID | Creditor's Name | Date Incurred | Basis for Claim | Contingent | Unliquidated | Disputed | Is the Claim Subject to Offset? (Yes/No) | Scheduled Claim Amount | Secured | Priority | General Unsecured | Post - Petition Payments Pursuant to Stipulation | Secured | Priority | General Unsecured | Total Claim Amount | Objection? |
| 3.042 | National Search Group Inc. | Various | Trade Claim | | | x | No | 42,000.00 | | | | | | | - | - | |
| POC 10 | National Search Group Inc. dba Woodjobs.com | | | | | | | | | | 44,835.00 | | | | 44,835.00 | 44,835.00 | |
| 3.043 | Next Level Installations LLC | Various | Trade Claim | | | | No | 146,122.10 | | | | | | | 146,122.10 | 146,122.10 | |
| 3.044 | Noe Tellez | 2/19/2024 | Trade Claim | | | | No | 1,600.00 | | | | | | | 1,600.00 | 1,600.00 | |
| 3.045 | NuWorld Business Systems | Various | Trade Claim | | | | No | 483.25 | | | | | | | 483.25 | 483.25 | |
| 3.046 | Occupational Health Centers of California, A Medical Corp | Various | Trade Claim | | | | No | 1,140.28 | | | | | | | 1,140.28 | 1,140.28 | |
| 3.047 | OpenWorks | Various | Trade Claim | | | | No | 5,470.78 | | | | | | | 5,470.78 | 5,470.78 | |
| 3.048 | ORANGE COURIER, INC. | Various | Trade Claim | | | | No | 820.39 | | | | | | | 820.39 | 820.39 | |
| 3.049 | Ortiz Custom Upholstery, Inc | Various | Trade Claim | | | | No | 15,358.73 | | | | | | | 15,358.73 | 15,358.73 | |
| 3.050 | Pac Com Abrasives & Supplies Inc | 7/19/2023 | Trade Claim | | | | No | 408.37 | | | | | | | 408.37 | 408.37 | |
| 3.051 | Pacific Coast Propane Llc | Various | Trade Claim | | | | No | 1,708.85 | | | | | | | 1,708.85 | 1,708.85 | |
| 3.052 | PACIFIC UPHOLSTERY | 5/5/2023 | Trade Claim | | | | No | 1,181.00 | | | | | | | 1,181.00 | 1,181.00 | |
| 3.053 | Phillips Plywood Company, Inc. | Various | Trade Claim | | | | No | 12,597.52 | | | | | | | 12,597.52 | 12,597.52 | |
| 3.054 | Quench USA, Inc | Various | Trade Claim | | | | No | 1,066.78 | | | | | | | 1,066.78 | 1,066.78 | |
| 3.055 | Randstad Engineering | Various | Trade Claim | | | | No | 7,956.00 | | | | | | | - | - | |
| POC 26 | Randstad US | | | | | | | | | | 7,981.50 | | | | 7,981.50 | 7,981.50 | |
| 3.056 | Revelations Integrated Services Inc. | Various | Trade Claim | | | | No | 4,930.45 | | | | | | | 4,930.45 | 4,930.45 | |
| 3.057 | RingCentral | Various | Trade Claim | | | x | No | 55,489.44 | | | | | | | 55,489.44 | 55,489.44 | |
| 3.058 | Robert Rivas | 12/31/2023 | Commission | x | | | No | Undetermined | | | | | - | | - | - | |
| POC 05 | Robert Rivas | | | | x | | | | | | 341,473.00 | | | | 341,473.00 | 341,473.00 | Y |
| 3.059 | Royal Plywood Company, Llc | Various | Trade Claim | | | | No | 55,372.16 | | | | | | | - | - | |
| POC 14 | Royal Plywood Company, Llc | | | | | | | | | | 61,409.33 | | | | 61,409.33 | 61,409.33 | |
| 3.060 | RRS Finishers Group, LLC | Various | Trade Claim | | | | No | 69,098.00 | | | | | | | 69,098.00 | 69,098.00 | |
| 3.061 | Rubio Monocoat USA, LLC | 7/10/2023 | Trade Claim | | | | No | 223.15 | | | | | | | 223.15 | 223.15 | |
| 3.062 | SG cad Inc. | Various | Trade Claim | | | | No | 10,140.00 | | | | | | | - | - | |
| POC 09 | SG cad Inc. | | | | | | | | | | 10,140.00 | | | | 10,140.00 | 10,140.00 | |
| 3.063 | Sherwin Williams | Various | Trade Claim | | | | No | 135.26 | | | | | | | 135.26 | 135.26 | |
| 3.064 | Sierra Forest Products | Various | Trade Claim | | | | No | 9,201.22 | | | | | | | 9,201.22 | 9,201.22 | |
| 3.065 | SINGERLEWAK LLP - MI | Various | Trade Claim | | | x | No | 21,636.86 | | | | | | | 21,636.86 | 21,636.86 | |
| 3.066 | Skillset Group | Various | Trade Claim | | | | No | 10,694.52 | | | | | | | 10,694.52 | 10,694.52 | |
| 3.067 | Smash My Trash Northwest Anaheim | Various | Trade Claim | | | | No | 1,900.00 | | | | | | | - | - | |
| POC 01 | Smash My Trash Northwest Anaheim/R&F Partners, Inc. | | | | | | | | | | 2,120.00 | | | | 2,120.00 | 2,120.00 | |
| 3.068 | Spectrum Enterprise | Various | Trade Claim | | | | No | 2,798.00 | | | | | | | - | - | |
| POC 03 | Spectrum Enterprise | | | | | | | | | | 2,984.53 | | | | 2,984.53 | 2,984.53 | |
| POC 12 | Spectrum Enterprise | | | | | | | | | | 35,845.70 | | | | 35,845.70 | 35,845.70 | Y |
| 3.069 | Stiles Machinery Inc | Various | Trade Claim | | | | No | 2,079.50 | | | | | | | 2,079.50 | 2,079.50 | |
| 3.070 | SUMMA SOLUTIONS, INC. | 5/9/2023 | Trade Claim | | | | No | 379.00 | | | | | | | 379.00 | 379.00 | |
| 3.071 | Tile Expo Inc | Various | Trade Claim | | | | No | 36,677.37 | | | | | | | - | - | |
| POC 22 | Tile Expo Inc | | | | | | | | | | 36,677.37 | | | | 36,677.37 | 36,677.37 | |
| POC 25 | U.S. Bank N.A. d/b/a U.S. Bank Equipment Finance | | | | | | | | 77,250.00 | | | | 77,250.00 | | - | 77,250.00 | |
| POC 20 | U.S. Small Business Administration | | | | | | | | 541,352.74 | | | | 541,352.74 | | - | 541,352.74 | |
| 3.072 | Uline, Inc. | Various | Trade Claim | | | | No | 7,655.91 | | | | | | | - | - | |
| POC 02 | Uline, Inc. | | | | | | | | | | 6,685.48 | | | | 6,685.48 | 6,685.48 | |
| 3.073 | United Forklift | 7/14/2023 | Trade Claim | | | | No | 900.00 | | | | | | | 900.00 | 900.00 | |
| 3.074 | Vista Paint | Various | Trade Claim | | | | No | 577.37 | | | | | | | 577.37 | 577.37 | |
| 3.075 | West Coast Laminating, Inc. | Various | Trade Claim | | | | No | 27,591.22 | | | | | | | 27,591.22 | 27,591.22 | |
| 3.076 | Wood Repair Products, Inc. | Various | Trade Claim | | | | No | 8,543.73 | | | | | | | 8,543.73 | 8,543.73 | |
| 3.077 | Wurth Louis & Company | 12/1/2023 | Trade Claim | | | | No | 83.10 | | | | | | | 83.10 | 83.10 | |
| 3.078 | XpressMyself.com LLC | 7/19/2023 | Trade Claim | | | | No | 3,098.85 | | | | | | | 3,098.85 | 3,098.85 | |
| 3.079 | Z.E.M. Design | Various | Trade Claim | | | | No | 985.00 | | | | | | | 985.00 | 985.00 | |
| | | | | | | | TOTAL | 8,626,982.36 | 676,597.64 | 189,700.76 | 1,454,864.28 | (162,053.60) | 676,597.64 | 189,700.76 | 8,925,390.39 | 9,791,688.79 | |

**Exhibit B_002**

| Fill in this information to identify the case: |
|---|
| Debtor name: MASHindustries, Inc. |
| United States Bankruptcy Court for the: Central District of California |
| Case number: 24-11046 |

☐ Check if this is an amended filing

## Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases

**Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.**

**Schedule G:**    **Executory Contracts and Unexpired Leases**

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

| 2.1 | State what the contract or lease is for and the nature of the debtor's interest | Equipment Finance Agreement | JPMorgan Chase Bank, NA<br>Collateral Mgmt Small Business<br>PO Box 33035<br>Louisville, KY 40232-9891 |
|---|---|---|---|
| | State the term remaining | Unknown | |
| | List the contract number of any government contract | | |

| 2.2 | State what the contract or lease is for and the nature of the debtor's interest | Vehicle Lease | Toyota Financial Services<br>1230 Santa Monica Blvd<br>Santa Monica, CA 90404 |
|---|---|---|---|
| | State the term remaining | Unknown | |
| | List the contract number of any government contract | | |

| 2.3 | State what the contract or lease is for and the nature of the debtor's interest | Equipment Finance Agreement | U.S. Bank Equipment Finance<br>A Division Of U.S. Bank National Association<br>1310 Madrid Street<br>Marshall, MN 56258 |
|---|---|---|---|
| | State the term remaining | Unknown | |
| | List the contract number of any government contract | | |

**Exhibit C_001**

| 2.4 | **State what the contract or lease is for and the nature of the debtor's interest** | Insurance Agreement | Kinsale Ins. Co. |
|---|---|---|---|
| | **State the term remaining** | Unknown | |
| | **List the contract number of any government contract** | | |

| 2.5 | **State what the contract or lease is for and the nature of the debtor's interest** | Insurance Agreement | Hartford |
|---|---|---|---|
| | **State the term remaining** | Unknown | |
| | **List the contract number of any government contract** | | |

| 2.6 | **State what the contract or lease is for and the nature of the debtor's interest** | Insurance Agreement | Kinsale Ins. Co. |
|---|---|---|---|
| | **State the term remaining** | Unknown | |
| | **List the contract number of any government contract** | | |

| 2.7 | **State what the contract or lease is for and the nature of the debtor's interest** | Insurance Agreement | AmGuard |
|---|---|---|---|
| | **State the term remaining** | Unknown | |
| | **List the contract number of any government contract** | | |

| 2.8 | **State what the contract or lease is for and the nature of the debtor's interest** | Insurance Agreement | Everest Insurance |
|---|---|---|---|
| | **State the term remaining** | Unknown | |
| | **List the contract number of any government contract** | | |

| 2.9 | **State what the contract or lease is for and the nature of the debtor's interest** | Insurance Agreement | Benchmark Specialty |
|---|---|---|---|
| | **State the term remaining** | Unknown | |
| | **List the contract number of any government contract** | | |

**Exhibit C_002**

| 2.10 | **State what the contract or lease is for and the nature of the debtor's interest** | Insurance Agreement | WestGUARD |
| | **State the term remaining** | Unknown | |
| | **List the contract number of any government contract** | | |

| 2.11 | **State what the contract or lease is for and the nature of the debtor's interest** | Insurance Agreement | United Healthcare |
| | **State the term remaining** | Unknown | |
| | **List the contract number of any government contract** | | |

| 2.12 | **State what the contract or lease is for and the nature of the debtor's interest** | Insurance Agreement | Kaiser |
| | **State the term remaining** | Unknown | |
| | **List the contract number of any government contract** | | |

| 2.13 | **State what the contract or lease is for and the nature of the debtor's interest** | Insurance Agreement | Guardian |
| | **State the term remaining** | Unknown | |
| | **List the contract number of any government contract** | | |

**Exhibit C_003**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**.

A true and correct copy of the foregoing document entitled: **DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED SEPTEMBER 10, 2024** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **September 10, 2024,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Michele S Assayag**    massayag@swlaw.com, kroger@swlaw.com
- **Shawn M Christianson**    cmcintire@buchalter.com, schristianson@buchalter.com
- **Michael J Hauser**    michael.hauser@usdoj.gov
- **Gregory Kent Jones (TR)**    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com
- **Anne C Manalili**    anne.manalili@sba.gov
- **Elissa Miller**    elissa.miller@gmlaw.com, emillersk@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com
- **Alan Novodor**    novodor@msn.com
- **Matthew D Pham**    mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **David M Poitras**    dpoitras@bg.law
- **Susan K Seflin**    sseflin@bg.law
- **Alan G Tippie**    Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Jessica Wellington**    jwellington@bg.law, ecf@bg.law

☐    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**THE REQUIREMENT OF LBR 5005-2(d) TO PROVIDE JUDGES COPIES IS SUSPENDED AT THIS TIME.**

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 10, 2024 | JESSICA STUDLEY | /s/ Jessica Studley |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.